A95A2451. BROWN v. AMERSON et al.
(469 SE2d 723)

ANDREWS, Judge.

Brown's wife slipped and fell in the parking lot of the branch of Great Southern Federal Savings and Loan Association (Great Southern) located in the Summit Center Shopping Center (Summit Center). Brown sued the owners of Summit Center for loss of consortium with his wife resulting from the fall, claiming the defendant owners negligently failed to keep the premises in a safe condition for invitees. Brown appeals from the trial court's grant of summary judg-

ment in favor of the defendants.

Mrs. Brown deposed that she was going to transact business at the Great Southern branch at Summit Center. She parked her car in a parking space adjacent to the branch office, got out of her car, took one step toward the office, and slipped and fell and broke her ankle. She testified it was misty at the time and that she slipped on the pavement on a "combination of moisture and oil from the previous cars parked there." When asked how she knew that was what she slipped on, she responded: "Well, it was misting that day and I do have knowledge that when there is moisture in the air and on the pavement that oil from parking lots and asphalt go straight to the top." When asked if she was able to observe anything that caused her to slip and fall, Mrs. Brown said, "No." Upon further questioning, she admitted she did not know specifically what caused her to slip and fall.

"Q: I think you told me that you don't know specifically what it was that caused you to fall on this occasion? A: I don't know specifically, no. Q: And you didn't — what I mean by that is you didn't look down and see something and observe and say that's what I —. A: No, I didn't. Q: And do you know whether there was a hole in the pavement or if there was just a surface there that was slippery? A: At the time of the fall? Q: Right. A: No."

Mrs. Brown further testified that she was not looking down at where she stepped when she slipped and fell and that she did not know exactly where in the parking lot she slipped and fell. She was only able to identify a ten- to fifteen-foot-wide area in the parking lot where she believed she slipped and fell.

After his wife's deposition, and in response to the defendants' motion for summary judgment, Brown filed an affidavit from his wife in which she stated that, "I slipped because the moisture and oil which had accumulated on the pavement made the pavement extremely slippery. . . ." She further explained in her affidavit that, when she said in her deposition that she did not know specifically what caused her to slip, "I was trying to state and at that time understood that I was communicating that I did not know what caused my fall more specifically than I had testified to already during the deposition." The affidavit continued: "That is, the extreme slipperiness of the parking lot caused by the accumulated oil and water on it caused my fall. My understanding of the questions asked at the deposition was that they sought information as to whether some other specific thing or item in the parking lot, besides the general extreme slipperiness, was the cause of my fall. I could not identify any other such cause because I did not see any other thing which could have been the cause." Mrs. Brown further stated in her affidavit: "[W]hile I appreciated some risk due to the misting conditions and the usual presence

of some oil in parking lots and therefore exercised caution and used my vision to look around for any obstructions or dangers, I did not expect or appreciate the extremely slippery condition I encountered on that parking lot. While I could not identify later specifically where in the parking lot I fell, I know, because of the way I fell and how the parking lot felt as my foot slipped out from under me that the fall resulted from the unusually slippery condition of the parking lot, a condition I did not expect."

Mrs. Brown's deposition testimony clearly indicates that she did not observe anything which caused her to slip and fall, and she did not know of any specific thing which caused her to slip and fall. Her deposition testimony that she slipped on a combination of moisture from the misty conditions and oil from the previous cars parked there is pure speculation supported only by her statement that "I do have knowledge that when there is moisture in the air and on the pavement that oil from parking lots and asphalt go straight to the top." This statement amounts to no more than a guess or speculation by Mrs. Brown as to what may have caused her to slip and fall. Guesses or speculation which raise merely a conjecture or possibility are not sufficient to create even an inference of fact for consideration on summary judgment. *Brumbelow v. City of Rome*, 215 Ga. App. 321, 322 (450 SE2d 345) (1994); *Jiffy Store v. Bishop*, 190 Ga. App. 716, 717 (379 SE2d 602) (1989). Accordingly, the deposition did not provide evidence that Mrs. Brown slipped on water and oil in the parking lot. Rather, it established that she did not see or otherwise know of what caused her to slip and fall.

To the extent Mrs. Brown's subsequently filed affidavit attempts to establish otherwise by stating that she slipped on accumulated moisture and oil, it contradicts her previous deposition testimony without giving any reasonable explanation for the contradiction. Under the contradictory testimony rule of *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) (1986), the contradictory portions of the affidavit are excluded from consideration. Accordingly, at best, the evidence in this case shows that Mrs. Brown slipped and fell as a result of a slippery condition of unknown origin which occurred somewhere in the ten- to fifteen-foot-wide area of the parking lot identified by Mrs. Brown.

In order to recover for loss of consortium resulting from the fall, Brown must show that the defendants had actual or constructive knowledge of a hazard which caused his wife to slip and fall and that his wife was without knowledge of the hazard or for some reason attributable to the defendants she was prevented from discovering the hazard. *Alterman Foods v. Ligon*, 246 Ga. 620, 623 (272 SE2d 327) (1980). Mrs. Brown has produced no evidence of what foreign substance, condition, or hazard was present in the parking lot and caused

her to slip and fall. Accordingly, even assuming Mrs. Brown was without knowledge of the hazard, despite exercising reasonable care for her own safety, there is no evidence that the defendants had actual or constructive knowledge of any foreign substance, condition, or hazard which caused Mrs. Brown to slip and fall. The defendants stated by affidavit that they had no actual knowledge of any hazardous condition in the parking lot, and there is no evidence to the contrary. There is no evidence that anyone prior to Mrs. Brown had ever slipped or fallen in the parking lot. Without any proof as to the specific nature of the hazard, there is no basis for claiming that one of the defendant owners or an employee was in a position to have easily seen and removed the alleged hazard or that the alleged hazard had existed on the premises for a period of time sufficient to impute knowledge of it to the defendants. *McConnell v. Winn-Dixie Atlanta*, 194 Ga. App. 700, 701 (391 SE2d 785) (1990); *Bishop*, supra at 716-717.

In the absence of any evidence that the defendants had actual or constructive knowledge of the alleged hazard which caused the fall, the trial court correctly granted summary judgment in favor of the defendants. *Alterman Foods*, supra; *Lau's Corp. v. Haskins*, 261 Ga. 491, 495 (405 SE2d 474) (1991).

*Judgment affirmed. Beasley, C. J., Birdsong, P. J., Pope, P. J., Johnson, Blackburn, Smith and Ruffin, JJ., concur. McMurray, P. J., dissents.*

MCMURRAY, Presiding Judge, dissenting.

I respectfully dissent from the affirmance of summary judgment granted to the defendant landowners in plaintiff I. Stanley Brown's loss of consortium action arising from personal injuries sustained by plaintiff's wife, Debra Brown, when she slipped on the wet pavement of defendants' parking lot on a misty May afternoon, breaking her left ankle.

In my view, the majority should not have applied the rule of *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680), because Debra Brown's affidavit gave a perfectly *consistent* explanation for the cause of her fall, namely, a presence of oil on top of wet asphalt. Consequently, "when the deposition is, in its entirety, construed most strongly in [plaintiff's] favor, there is no conflict with the subsequent affidavit." *Shackelford v. DeKalb Farmer's Market*, 180 Ga. App. 348, 350 (2), 351 (349 SE2d 241). In the case sub judice, Debra Brown's credibility remained a matter peculiarly and exclusively for the jury to determine. OCGA § 24-9-80; *Ryder v. Schreeder*, 224 Ga. 382 (2), 386 (162 SE2d 375). I cannot agree that the majority is correct in dismissing, as speculative, Debra Brown's opinion that she slipped because the asphalt pavement was made especially slick

with oily residue brought to the surface by the misty weather. Debra Brown is competent to testify about this phenomenon as a matter of her *experience*. See, e.g., *Wood v. Morris*, 109 Ga. App. 148, 151 (3) (135 SE2d 484). The trier of fact could very well find that any such oily patch was nonexistent or was not a breach of defendants' duty to exercise ordinary care to keep their premises safe for invitees, or that there was no causal relationship between plaintiff's wife's injury and the circumstance that it occurred on defendants' property. *Smith v. Clifford H. Pryor & Assoc.*, 193 Ga. App. 523, 524 (388 SE2d 383). *But that determination is for the jury and not this Court.* I respectfully dissent.

DECIDED FEBRUARY 22, 1996.

*Sell & Melton, Mitchell P. House, Jr., Robert D. McCullers*, for appellant.
*Miller & Towson, Craig N. Cowart*, for appellees.