A96A0069. DOE v. PRUDENTIAL-BACHE/A.G. SPANOS REALTY PARTNERS et al.
(474 SE2d 31)

SMITH, Judge.

On a Sunday afternoon in December, Jane Doe was attacked after parking her car in the garage underneath her apartment build-

ing at Regency Square Apartments in Atlanta. After she exited her car and began walking away from it, a man approached her and demanded her purse. He threatened Doe with a knife, wrestled her to the ground, and shoved her over a nearby four-foot-high wall to the outside of the garage. After pushing her to a grassy area outside the garage and raping her, he fled, apparently taking her purse with him. These events occurred at midafternoon on a sunny day in December.

Doe brought this action against the owners/managers of Regency Square, alleging that Regency Square failed to maintain safe premises under OCGA §§ 51-3-1 and 44-7-14, failed to provide a premises free of latent defects, failed to provide adequate security, made fraudulent misrepresentations regarding the security at Regency Square, and failed to warn her of defects in the design of parking garages and security fences.[1] Regency Square moved for summary judgment on all claims, which was granted by the trial court.

1. Doe contends the trial court erroneously granted summary judgment to Regency Square on her OCGA § 51-3-1 claim. We disagree. To prevail against a proprietor when one is injured by the criminal act of a third party, a plaintiff must show that the act was reasonably foreseeable. *Savannah College of Art &c. v. Roe*, 261 Ga. 764, 765 (2) (409 SE2d 848) (1991); *Lau's Corp. v. Haskins*, 261 Ga. 491, 492 (1) (405 SE2d 474) (1991).

(a) A plaintiff may prove that the criminal act was reasonably foreseeable through evidence of prior substantially similar crimes. *Roe*, supra, 261 Ga. at 765. In *Roe*, plaintiffs were sexually assaulted in their college dormitory. Id. at 764. The college had no knowledge of prior sexual assaults, and no evidence of other violent crimes against individuals was presented. Id. at 765-766. The Supreme Court concluded that the evidence was insufficient "to create a factual issue as to whether the college knew or should have known that its dormitory residents were at risk of a violent criminal sexual attack" and held that summary judgment on the college's behalf was warranted. Id.

On motion for summary judgment, Regency Square submitted undisputed evidence that prior to Doe's attack, there had been no physical attack against a person in the garages at Regency Square. Doe responded that during the five months before she began renting her apartment, twelve crimes were committed in the parking garages: nine thefts and three acts of vandalism. Relying on police incident reports, she also stated that 19 thefts were reported during the time she lived at Regency Square. She contended that she was informed of only two incidents.

---

[1] She also sued her assailant in the same action.

We recognize that "substantially similar does not mean identical." *Matt v. Days Inns of America*, 212 Ga. App. 792, 794 (443 SE2d 290) (1994), aff'd, 265 Ga. 235 (454 SE2d 507) (1995). In *Matt*, plaintiff was shot in the parking lot of a hotel. Evidence was presented that prior to the shooting, several crimes occurred in the parking lot including a robbery by force without the use of a weapon. *Matt*, supra, 212 Ga. App. at 792. The record of criminal incidents, including violent assaults, in parking lots of nearby hotels was also introduced. Id. at 792-793. We concluded that this evidence was sufficient to create a factual issue as to foreseeability of criminal conduct against the hotel's guests. Id. at 795. Stating that a "free bite" analysis is not the test of foreseeability, we found no distinction between robberies by force and violence and armed robberies. Id. Similarly, in *Shoney's, Inc. v. Hudson*, 218 Ga. App. 171 (460 SE2d 809) (1995), a restaurant patron was robbed in the restaurant's parking lot. Id. Evidence was presented that prior to this incident, the restaurant knew about three prior acts of violence against employees of the restaurant and one act of violence against a person next door. Id. at 172. We found no distinction between crimes against employees and those against patrons and concluded that the prior incidents were substantially similar to the attack against the plaintiff. Id. at 173.[2]

A distinction *does* exist, however, between crimes against property and crimes against persons. In *Matt*, we distinguished *Roe*, noting that the prior crimes in *Roe* were not violent crimes against persons but were "offenses against property or public morals which would not put the college on notice that it was reasonable to expect a sexual attack on a dormitory resident." 212 Ga. App. at 795. This distinction was also recently acknowledged in *Piggly Wiggly Southern v. Snowden*, 219 Ga. App. 148 (464 SE2d 220) (1995). Citing *Matt*, this Court stated: "[W]e consider the key to sufficient similarity to be not in the details of the crime or even in the degree of force used, but rather in the *nature* of the offense: *was the prior incident also an offense against a person, or was it an offense against property or public morals?*" (Emphasis supplied.) Id. at 149 (1) (a).

We have not the slightest doubt that Doe suffered a horrible and terrifying experience. However, unlike *Matt* and *Hudson*, the evidence was undisputed that no prior violent criminal attacks, sexual or otherwise, occurred on persons prior to Doe's rape. As in *Roe*, supra, the evidence here did not create a factual issue as to whether

---

[2] In support of her argument that no "free bite" rule exists in this state, Doe cites *Wallace v. Boys Club of Albany &c.*, 211 Ga. App. 534 (439 SE2d 746) (1993). We recognize that we reversed the grant of summary judgment for the defendant there. The holding in that case, though, is inapposite. *Wallace* involved negligent "supervision of a child of tender age" and was not a premises liability case. Id. at 535 (1).

Regency Square knew or should have known that its residents "were at risk of a violent criminal sexual attack." 261 Ga. at 766. See also *Ritz Carlton Hotel Co. v. Revel*, 216 Ga. App. 300, 303 (454 SE2d 183) (1995).

(b) We agree with Doe that proof of prior substantially similar incidents is not the only method of proving foreseeability. In *Hudson*, supra, evidence was presented that the restaurant's management had previously "acknowledged that there was a potential for attacks on customers in the restaurant's parking lot." 218 Ga. App. at 174. Similarly, in *Snowden*, supra, two of defendant's employees testified that they considered the parking lot where plaintiff was raped unsafe, that "they had repeatedly suggested the hiring of a security guard, that male employees always walked female employees to their cars at night, and that they would not allow their wives to go to the store alone." 219 Ga. App. at 149 (1) (b).

Without pointing to evidence that Regency Square's management actually acknowledged the potential for physical attack in its parking garages, Doe relies primarily on the affidavit of an individual she characterizes as an expert in premises security. She argues that Regency Square had knowledge that a crime against an individual was likely to occur because it knew of a large number of crimes in the parking garages. The expert made the following observations: Regency Square knew or should have known that the garages attracted criminals and that criminals were being allowed access to the premises; Regency Square knew or should have known that the regularly occurring crimes increased the risk of physical harm; Regency Square should have known that a tenant, if present during the commission of the crimes, could become a victim of a violent crime and that failure to deter crimes against property would escalate into crimes against people. Doe argues that under *Hudson*, this evidence raises a factual question as to the foreseeability of her attack.

We disagree. In *Hudson*, an expert did testify by affidavit that the defendant should have provided uniformed security at night in defendant's parking lot "because it was located in a high crime area and was surrounded by areas of dark shadows." 218 Ga. App. at 174. This case, however, is distinguished factually. The expert testimony in *Hudson* was merely cumulative of evidence of prior crimes against individuals and the proprietor's knowledge of those crimes. Here, it is undisputed that no crimes against individuals occurred prior to Doe's attack. Doe's attack occurred during midafternoon on a sunny day. Doe acknowledged that the garage was adequately lit and that she was familiar with the layout of the garage. Our law does not support imposition of liability based on the conclusions of Doe's expert that physical assault could or would occur. Assuming that Regency

Square had knowledge of several thefts, crimes against property do not constitute evidence that crimes against people can or will occur. See *Roe*, supra; *Lau's Corp.*, supra; *Revel*, supra.

(c) We also reject Doe's contention that her attack was foreseeable because newspapers and other media in the metro-Atlanta area reported that a serial rapist, known as the "Buckhead rapist," who had attacked women almost exclusively in parking garages was at large. Such reports, even if admissible and even if it was shown that agents of Regency Square had read or heard them, provide no basis for imposition of liability on Regency Square. To so impose liability would effectively make Regency Square and every other metro-Atlanta business with a parking garage an insurer of its own premises. Evidence that an alleged rapist was at large in another part of Atlanta is not comparable to the evidence in *Hudson* that "it was common knowledge that the restaurant in question was located in *the* highest crime area of any of the Shoney's restaurants in Savannah." (Emphasis supplied.) 218 Ga. App. at 174. Moreover, such evidence is not comparable to evidence in *Hudson* that the restaurant's own employees acknowledged the potential for attacks in the restaurant's parking lot. This contention has no merit.

(d) Doe also contends that "there is evidence that [Regency Square] had notice of the presence of the actual rapist in the parking garages at the complex just days before the rape" yet failed to respond to this knowledge, creating an issue of fact as to whether Regency Square breached its duty of exercising ordinary care. She contends that had Regency Square responded appropriately to the report about this individual, her rape could have been avoided.

Doe mischaracterizes the evidence presented. She submitted evidence that a few days before the rape, a suspicious-looking man was seen "running from place to place" and that Regency Square did nothing in response to the report. The couple who saw him was shown a photograph of the actual rapist but could not identify the rapist as being the suspicious-looking man they saw in the garage. Further, the rapist himself was described by Doe as being clean and pleasant-looking — like "someone who lived in the complex" — not as being suspicious. The evidence did not connect the unidentified, suspicious-looking man with the rapist, and we find no merit in Doe's contention that Regency Square had notice of the rapist's presence in the parking garage prior to the rape. See *Revel*, supra, 216 Ga. App. at 305 (3).

2. Doe also argues that Regency Square should have taken additional security measures in light of its "knowledge that criminals were being allowed access to the garages and that their existing security measures were not deterring such entry." She contends blind spots provided places for criminals to hide and that assaults could

occur without detection, both out of sight and out of earshot. She states that access could have been controlled by placing fencing over areas of open access and that the garages could have been patrolled at all hours. Doe again attempts to impose the status of insurer on Regency Square, and we reject this contention.

Even a threshold duty to provide security measures for the type of attack involving Doe requires a showing that the attack was foreseeable. "Knowledge of a dangerous condition giving rise to the incident is necessary in order to show the existence of even an initial duty to provide preventive security measures for this type of attack. [Cit.]" Id. at 303 (2). Here, as in *Revel*, "[s]ince there were no prior substantially similar attacks on the premises, there was no such knowledge and no duty to provide security adequate to protect against this kind of attack. [Cits.]" Id. Since the rape in this case was not foreseeable, we cannot state that measures additional to those undertaken by Regency Square were necessary.

3. Under a "breach of assumed duty" theory, Doe argues that because *some* security measures were undertaken, Regency Square should be liable because more were not undertaken. We disagree. "A landowner does not become an insurer of safety by taking some security precautions on behalf of invitees. Undertaking measures to protect patrons does not heighten the standard of care; and taking some measures does not ordinarily constitute evidence that further measures might be required. . . . If a defendant undertakes to do more for the benefit of another person than the law requires, he or she may be held liable if he or she acts unreasonably or makes the situation worse, by increasing the danger, or by misleading the plaintiff into belief that it has been removed, or by depriving the plaintiff of the possibility of help from other sources." (Citations and punctuation omitted.) Id. at 303-304.

The record reveals that Regency Square employed both an outside security service and a courtesy officer. From 10:00 p.m. until 6:00 a.m., periodic patrols were made by both the courtesy officer and employees of the security service. In general, courtesy officers "walk[ed] the property" daily and responded to problems such as broken lights, lockouts, and loud music complaints. While the purpose of the courtesy and security services, according to Regency Square, was not necessarily to deter crime but to make tenants feel "more comfortable," provision of these services could not reasonably lead to the conclusion that all danger had been removed from an area such as the parking garage, which Doe admitted was accessible from the outside. She acknowledged that if anyone wanted to enter the garage, he could enter in one of the open areas over a wall only four feet high, could walk in the open area where the gate was located, or could come down the stairs or elevator. She also acknowledged that

she was never guaranteed that no danger would befall her. Despite Doe's knowledge of the layout of the garage, she continued to park in the garage even though other parking was available. In short, "contrary to misleading [Doe] into believing that all generalized danger had been removed, aspects of the [garage] itself indicated that not all conceivable risks had been removed." Id. at 304 (2).

4. Doe contends that Regency Square had a duty under OCGA §§ 44-7-13 and 44-7-14 to remedy latent defects in the premises. She maintains that Regency Square should have known the garages were defectively designed, having isolated hiding places that could not be seen from the apartments or by passersby. According to Doe, Regency Square should have known that the design was defective because of the other crimes and the suspicious individual, and her attack was "a natural and probable consequence of these dangerous conditions." Again, the alleged "other crimes" were not violent crimes against persons that made Doe's rape foreseeable. See Division 1, supra. And if any defect existed, it was open and obvious. Division 3, supra.

5. Doe bases a fraud claim against Regency Square on alleged statements regarding safety made by an unidentified individual. She contends that she was told by a leasing agent that the grounds and garages were "patrolled and secured" and that she chose to lease an apartment based on this representation. According to Doe, despite these "promises," no patrols were provided that could have deterred the rapist. Instead, patrols occurred only during limited nighttime hours. She states that these "promises" and actions misled her into believing the dangers presented by the open access to the parking garages had been removed. She contends that if she had known the danger had not been removed, she would not have parked in the garage on the day of the rape.

Doe's fraud claim fails. To prevail on such a claim, one must prove five essential elements, the first being that the defendant made a false representation. See, e.g., *Pankowsky v. Sasine*, 218 Ga. App. 646, 647 (2) (462 SE2d 791) (1995). Doe has pointed to no evidence that an agent made a misrepresentation to her, other than her bare allegation that an agent of Regency Square stated that the garages were "patrolled and secured." Even if agency were adequately proved, the record does not show that the imputed statement was untrue. As noted in Division 3, evidence was presented that the garages were patrolled during certain hours of the day. Doe attempts to substantiate her fraud claim by contending that the agent failed to tell her that guards walked through the garages only during certain limited hours. Such an alleged "concealment," though, provides no basis for Doe's claim. "Concealment of material facts may amount to fraud when direct inquiry is made, and the truth evaded, or where the concealment is of intrinsic qualities of the article which the other

party by the exercise of ordinary prudence and caution could not discover." (Citations and punctuation omitted.) *Miller v. Clabby*, 178 Ga. App. 821, 822 (344 SE2d 751) (1986). Doe admitted below that she asked no questions as to the schedule of patrols. Consequently, there can be no contention that the truth was evaded upon inquiry. The fact that the garage was not patrolled 24 hours a day, seven days a week was not an "intrinsic" condition which, in the exercise of ordinary prudence, could not be discovered. Doe lived at Regency Square 23 months prior to her attack, and ordinary observation should have revealed to her that the garages were not patrolled constantly. Doe also signed a rental application referring to some properties with a "24 hour guarded gate," thereby implicitly placing her on notice that some but not all of Regency Square properties did provide 24-hour guarded gates and that Regency Square was not such a property. Finally, that agreement provided: "Residents are responsible for their own safety. We do not warrant that our security is capable of deterring or preventing crime. Every resident is encouraged to assist in crime prevention."

Doe also attempts to create a jury issue by stating that the agent told her that the garage was "secured" in addition to being patrolled. This attempt fails because this statement was merely one of opinion, or sales puffing, which cannot form the basis of a fraud claim. See *U-Haul Co. of Western Ga. v. Dillard Paper Co.*, 169 Ga. App. 280, 281 (312 SE2d 618) (1983). "Misrepresentations are not actionable unless the complaining party was justified in relying thereon in the exercise of common prudence and diligence. And when the representation consists of general commendations or *mere expressions of opinion,* hope, expectation and the like, the party to whom it is made is not justified in relying upon it and assuming it to be true; he is bound to make inquiry and examination for himself so as to ascertain the truth." (Citations and punctuation omitted.) *Miller*, supra, 178 Ga. App. at 822. Doe was bound to inquire into the alleged statement that the garage was secured. In fact, she admitted that she "wondered" about the security of the garage because she could see the open areas. Despite her concern, however, she failed to independently investigate whether the garage was indeed secure. She did not exercise common prudence in an effort to "ascertain the truth" of the alleged statement that the garages were secured and cannot claim fraud.

*Judgment affirmed. Pope, P. J., and Andrews, J., concur.*

DECIDED JUNE 19, 1996 —
RECONSIDERATION DENIED JULY 10, 1996 — 

*Sutherland, Asbill & Brennan, William D. Barwick, Patricia A.*

*Gorham, William S. Wright*, for appellant.

*Long, Weinberg, Ansley & Wheeler, J. Kenneth Moorman, Kathryn S. Whitlock, John C. Bonnie*, for appellees.