A06A2471. BROOKVIEW HOLDINGS, LLC v. SUAREZ et al.

(645 SE2d 559)

BARNES, Chief Judge.

This appeal arises from the grant of Brookview Holdings, LLC's ("Brookview") application for an interlocutory appeal after the trial court denied Brookview's motion for summary judgment. The case itself is a premises liability action based upon the murder of Manuel Pantoja, a tenant in a trailer park that Brookview owned.

Brookview contends the trial court erred by denying its motion for summary judgment because it owed no duty to Mr. Pantoja to provide security as it had no knowledge of any prior crimes, no evidence showed it caused Mr. Pantoja's death, Mr. Pantoja had equal knowledge of the danger and failed to exercise care for his own safety, and the elements of awarding punitive damages under OCGA § 51-12-5.1 (b) were not satisfied by clear and convincing evidence. We disagree and affirm.

In Georgia,

> [s]ummary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). To obtain summary judgment, a defendant need not produce any evidence, but must only point to an absence of evidence supporting at least one essential element of the plaintiff's claim. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). We apply a de novo standard of review to an appeal from a grant of summary judgment and view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citation omitted.) *Ponder v. Brooks*, 256 Ga. App. 596, 597 (569 SE2d 267) (2002). Any doubts on the existence of a genuine issue of material fact are resolved against the movant for summary judgment. *Kelly v. Vargo*, 261 Ga. 422, 423 (1) (405 SE2d 36) (1991). Additionally, under the law of this State,

> at summary judgment a party who will not bear the burden of proof at trial need not conclusively prove the opposite of each element of the non-moving party's case. Rather, that party must demonstrate by reference to the evidence in the record that there is an absence of evidence to support at least one essential element of the non-moving party's case. In other words, summary judgment is appropriate when the court, viewing all the facts and reasonable inferences from those facts in a light most favorable to the non-moving party,

> concludes that the evidence does not create a triable issue as to each essential element of the case.

*Lau's Corp. v. Haskins*, supra, 261 Ga. at 495. The essential elements of a negligence cause of action are:

> (1) A duty, or obligation, recognized by law, requiring the actor to conform to a certain standard of conduct, for the protection of others against unreasonable risks. (2) A failure on his part to conform to the standard required. (3) A reasonable close causal connection between the conduct and the resulting injury. (4) Actual loss or damage resulting to the interests of the other.

Id. at 492.

Viewing the evidence, and all reasonable conclusions and inferences drawn from the evidence, in the light most favorable to Suarez as the nonmovant, the record shows that Manuel Pantoja was an 82-year-old man living in a mobile home in Augusta Estates, a mobile home community in Augusta, Georgia, predominantly populated by long-time residents who were elderly and retired people. Brookview is a South Carolina limited liability company, which purchased Augusta Estates from the previous owner in November 2003.

Before purchasing Augusta Estates, Brookview's owners met with the previous owner and the then resident manager, who informed them that Augusta Estates implemented security measures, including security personnel on the premises from 11:00 p.m. until 6:00 a.m. During these hours, the personnel would sit near the office and check the identification of people coming in and out of the property and would patrol the grounds approximately three times per night. A resident testified that the security also would stop people at the gate to Augusta Estates. The previous owner charged the residents a monthly fee of $5 for this security. Brookview stated that it intended to continue this on-site security.

The former resident manager testified that when she started working at Augusta Estates in 1997, they had some problems, but they cleared up the problems by having security. When she met with the new owners of Augusta Estates, she told them they needed to maintain the security.

In January 2004, Brookview sent the residents of Augusta Estates a letter informing them that it had purchased the property and telling them that Brookview was "excited about this opportunity and feel confident that we will continue to provide you with a pleasant and safe place for you and your family to live." The letter also informed the tenants that they should send their rent and "other

payments" to a post office box in South Carolina. The letter also stated that "rental and other payment" should be made payable to Brookview and "[a]ll lot and rental rates will continue as scheduled."

After Brookview purchased Augusta Estates, it continued to charge the residents the $5 monthly fee, but discontinued the security service without informing[1] the residents. The tenants, however, believed that they were paying for security. Brookview also replaced the former resident manager with a manager who did not live on site until after Mr. Pantoja was murdered and another resident was assaulted. The manager moved there when her husband was subsequently hired to provide security. Even though Augusta Estates was surrounded by known high-crime areas, no violent crimes had occurred at Augusta Estates while it had security.

Sometime between 9:00 p.m. on February 24, 2004, and 2:00 a.m. on February 25, 2004, Mr. Pantoja was brutally murdered. The front door of his residence was less than 100 yards from the entrance to the community where the security guards were previously located and was visible from the Augusta Estates' office. There was no evidence of forced entry, and his front porch light was still on when police arrived. There was significant blood spatter on the exterior of the front door, which opened inward, indicating that Mr. Pantoja was attacked at the front door while the door was open. His wallet, which had been attached to his pants via a lanyard, was missing. Nothing else in the residence was disturbed. From the blood stains, the suspect left the trailer from a window at the rear of the residence.

After this attack, Brookview did not reinstate security, but still continued to charge the monthly fee. Late in the evening on March 6, 2004, another elderly resident of Augusta Estates was robbed, beaten, strangled and left for dead. That resident stated that the attacker was not a resident of Augusta Estates. Following this attack, Brookview reinstated security.

Lynda J. Suarez, the executrix of Mr. Pantoja's estate and his surviving children[2] sued Brookview for personal injury and wrongful death, alleging that Brookview was negligent for failing to provide on-site security and management at Augusta Estates. Brookview moved for summary judgment alleging that the plaintiffs had failed to demonstrate that it breached any duty to Mr. Pantoja or that its conduct caused the injuries. Specifically, Brookview contended that

---

[1] We have found nothing in the record showing that the residents were informed that Brookview had discontinued the security services or that the residents could stop paying the security charge, and Brookview has pointed to no evidence in the record showing that such was done.

[2] Lynda Suarez, Manuel D. Pantoja, James M. Pantoja, Jonathan D. Pantoja, and Kathy Tabor.

because it had no notice of any prior similar crimes or notice that Augusta Estates was in a high-crime area, the attack was not foreseeable, and thus it breached no duty to Mr. Pantoja to keep the premises safe. Brookview also contended that the attack on Mr. Pantoja was not proximately caused by its lack of security.

In response, the plaintiffs submitted evidence from a security expert and from the lead investigator with the Richmond County Sheriff's Office who opined that it was reasonably foreseeable that Brookview's failure to provide security patrols could lead to an attack such as the one at issue.

The trial court denied summary judgment to Brookview with the concise explanation that there were genuine issues of material fact remaining which precluded entry of judgment as a matter of law. Thereafter, Brookview filed its application for an interlocutory appeal, which was granted by this Court.

1. Brookview contends it owed no duty of providing security to Mr. Pantoja because no prior incidents had occurred that would give Brookview notice that security was required to protect the tenants. Even if true, however, we do not find this argument persuasive because this is not the usual premises liability case involving a criminal act by a third party in which the foreseeability of the act is relevant. In this case, Brookview had a contract to provide security in return for the tenants' payment of the security fee. Therefore, independent of the foreseeability issue, Brookview was required by contract to provide security.

"A tort is the unlawful violation of a private legal right other than a mere breach of contract, express or implied." OCGA § 51-1-1. Further, "[p]rivate duties may arise from statute or from relations created by contract, express or implied. The violation of a private duty, accompanied by damage, shall give a right of action." OCGA § 51-1-8. Moreover, OCGA § 51-1-11 (a) states that

> no privity is necessary to support a tort action; but, if the tort results from the violation of a duty which is itself the consequence of a contract, the right of action is confined to the parties and those in privity to that contract, except in cases where the party would have a right of action for the injury done independently of the contract.

See Adams, Georgia Law of Torts (2007 ed.), § 3-7 (a).

"[I]t is well established that breach of contractual duties may give rise to an action for damages for personal injuries. [Cit.]" *Paz v. Marvin M. Black Co.*, 200 Ga. App. 607, 608 (2) (408 SE2d 807) (1991). Also, "a legal duty can arise not only by operation of law but by a contract between the parties." *Armor Elevator Co. v. Hinton*, 213 Ga.

App. 27, 30 (2) (443 SE2d 670) (1994). Thus, "[i]t is axiomatic that a single act or course of conduct may constitute not only a breach of contract but an independent tort as well, if in addition to violating a contract obligation it also violates a duty owed to plaintiff independent of contract to avoid harming him." *Orkin Exterminating Co. v. Stevens*, 130 Ga. App. 363, 365 (203 SE2d 587) (1973). In this case, of course, Brookview, as the owner of Augusta Estates, had the independent legal duty "to exercise ordinary care in keeping the premises and approaches safe." OCGA § 51-3-1.

Therefore, pretermitting whether sufficient evidence of prior crimes existed to put Brookview on notice that it should provide security, we find that because of Brookview's contractual duty to provide security, the trial court did not err by denying summary judgment to Brookview on this ground. On appeal, a grant of summary judgment will be affirmed if it is right for any reason. *Malaga Mgmt. Co. v. John Deere Co.*, 208 Ga. App. 764, 767 (5) (431 SE2d 746) (1993).

2. Brookview argues that the evidence fails to establish a causal link between any actions on its part and the attack and murder of Mr. Pantoja, except in the form of opinion. In support of its position, Brookview primarily relies on *Post Properties v. Doe*, 230 Ga. App. 34 (495 SE2d 573) (1997) (physical precedent only). In that case, an intruder came into Doe's apartment through unknown means and assaulted her, and Doe claimed that Post's negligence allowed the entry into her apartment. This Court held that the plaintiff's "claim [was] defeated by her failure to produce evidence concerning how her assailant entered the property, whether he was lawfully there, and how he entered her apartment." Id. at 39.

*Doe* is not binding authority.[3] Even if it were, because the evidence shows that Mr. Pantoja was attacked at his front door in an area which could be observed by the security guards and not inside his home, the holding of *Doe* is inapplicable here. The allegations of Brookview's negligence do not depend upon a showing that the perpetrator entered Mr. Pantoja's trailer as a result of Brookview's negligent provision of physical measures. This Court in *Jackson v. Post Properties*, 236 Ga. App. 701 (513 SE2d 259) (1999), specifically rejected the trial court's reliance on *Doe* because even though the rape in *Doe* and the rape in *Jackson* occurred at the same property "significant factual differences" existed between the cases. Id. at 704

---

[3] "A judgment in which all judges of the Division fully concur is a binding precedent; if there is a special concurrence without a statement of agreement with all that is said in the opinion or a concurrence in the judgment only, the opinion is a physical precedent only." Court of Appeals Rule 33 (2005).

(4).[4] Therefore, we must reject Brookview's argument relying upon *Doe* for the same reason.

Even though "[g]uesses or speculation which raise merely a conjecture or possibility are not sufficient to create even an inference of fact for consideration on summary judgment," *Brown v. Amerson*, 220 Ga. App. 318, 320 (469 SE2d 723) (1996), this appeal involves more than guesses or speculation. The evidence shows that Mr. Pantoja was attacked while standing in his front door with the porch light on, in view of the office and not too far from the gate area. Whether the plaintiffs put forward evidence to show how the assailant entered the complex property and whether he was lawfully there is immaterial where, as here, the crime was committed in an area where security could have seen the episode, and the expert and the deputy testified that security would have deterred both strangers and residents from committing this kind of attack.

Suarez relied upon the testimony of an expert in security services, who investigated the area in which the attack on Mr. Pantoja occurred and the surrounding neighborhoods. He found that Augusta Estates bordered "an extremely high-crime area," and also testified that Brookview breached "a reasonable standard of care" by suspending the security. The expert further opined that "based upon the victimology, based upon the time frame of the assaults" the perpetrator of the attack on Mr. Pantoja was "an opportunistic offender, a disorganized offender, the kind of offender that we typically see can be deterred through effective presence of security." The expert also opined that when security is suspended in a high-crime area, "you have an expectation that a criminal event is going to occur," and that if security had been in place, "it would have significantly reduced the likelihood of it occurring." Additionally, the expert also stated that in his opinion even a roving security patrol can be very effective in reducing crime, as long as the patrolling is done randomly. "It's showing up when you're not expected, where you are not expected; and that can be very effective in reducing crime."

The plaintiffs also relied upon the deposition of the investigating deputy sheriff who stated that Brookview's failure to have security patrols was a cause in fact of the attack on Mr. Pantoja because a security patrol would have surveilled the incident whether the assailant was a tenant or trespasser. The deputy testified that, based upon the security which had been provided, his knowledge of the crime statistics from the area, and his familiarity with Augusta Estates and the surrounding area, it was more likely than not that the attacks on Mr. Pantoja and the other resident would not have

---

[4] The court in *Jackson* also noted that *Doe* was physical precedent only.

occurred had security been in place. The deputy also testified that one could look at the area and decide that security was necessary.

Additionally, the deputy testified that on-site security, regardless of the hours, gives a place a reputation that creates the impression of a high-visibility security situation. Criminals do not know the schedule of the security guards; they only know that they see security on site and think that security is always present.

Brookview attacks the expert's and the deputy's testimony as being mere opinion and supposition. We must first note that even though summary judgment may not be granted to a plaintiff based solely upon opinion evidence, *Howard v. Walker*, 242 Ga. 406, 407 (249 SE2d 45) (1978); *Ginn v. Morgan*, 225 Ga. 192, 193-194 (167 SE2d 393) (1969), opinion evidence presented by the respondent to a motion is sufficient to create a jury issue. Id. at 193. See also *Layfield v. Dept. of Transp.*, 280 Ga. 848, 851 (1) (632 SE2d 135) (2006); *Harrison v. Tuggle*, 225 Ga. 211, 213 (2) (167 SE2d 395) (1969).

Further,

the appropriate standard for assessing the admissibility of the opinion of [Suarez's] expert is not whether it is speculative or conjectural to some degree, but whether it is wholly so. An expert is not required to prove within a reasonable degree of scientific certainty his opinion of how an [incident] occurred. Moreover, this case involves summary judgment, and the non-movant is not required to produce evidence demanding judgment for that party, but only to present evidence which raises a material issue of fact. While the evidence adduced by [Suarez] in this case might not have been sufficient to persuade a jury that [the attack on her father was caused by Brookview's negligence], that is not the standard to be applied. Where the evidence on motion for summary judgment is ambiguous or doubtful, the party opposing the motion must be given the benefit of all reasonable doubts and of all favorable inferences and such evidence construed most favorably to the party opposing the motion. Furthermore, while a movant's evidence is to be carefully scrutinized, a respondent's evidence is to be treated with indulgence.

(Citation and punctuation omitted.) *Layfield v. Dept. of Transp.*, supra, 280 Ga. at 850-851. Here, both the expert and the deputy stated the reasons for their opinions, and examination of their testimony shows that it was not based upon mere conjecture or speculation. Instead, their testimony was based upon their study of

the area surrounding Augusta Estates, the record of crime in that area, and their experience with crimes of this nature.

Additionally, we must also note that Suarez can rely upon inferences arising from the evidence that when security was provided no tenants were attacked, but once Brookview quit providing security two tenants were the victims of violent crime.

Finally, "it is axiomatic that questions regarding proximate cause are 'undeniably a jury question' and may only be determined by the courts 'in plain and undisputed cases.' [Cit.]" *Ontario Sewing Machine Co. v. Smith*, 275 Ga. 683, 687 (2) (572 SE2d 533) (2002). Based upon the evidence discussed above, this is not such a case.

3. Brookview also contends the deceased had equal knowledge of the danger and took no steps to protect himself. Because Brookview had agreed to provide security service to Mr. Pantoja, and charged him for it, and the security guard, if present, would have checked anyone coming into the complex, and more important, would be in a location to observe Mr. Pantoja's front door, it would not be unreasonable for Mr. Pantoja to rely upon the security for the safety around his front door. Brookview's argument assumes that some evidence exists that Mr. Pantoja intentionally opened his door to his attacker, but it cannot point to evidence supporting this assumption. No evidence shows that Mr. Pantoja voluntarily opened his door to his murderer, or that he even responded to a knock at his door. As the evidence merely shows that Mr. Pantoja was attacked at his front door, the argument that he failed to protect himself is mere conjecture.

Therefore, unless Brookview established that the deceased knew that it had stopped providing security, it cannot prove that he had equal knowledge of the existing danger. Brookview relies upon a statement by Suarez that her father had complained around the first of February that he was being charged for security and not getting it as evidence that he knew that security was no longer being provided. The testimony shows that Mr. Pantoja apparently knew that the gate guards were no longer present at night, but it does not show that he knew that Brookview had decided to terminate the security the former owners had provided. His complaint also does not show that he was aware of any danger that someone might attack him at his front door.

Thus, we find no merit in Brookview's argument. The general rule is that a landlord is not an ensurer of his tenant's safety; however, landlords do have a duty to exercise ordinary care to prevent foreseeable third-party criminal attacks upon tenants. *Jackson v. Post Properties*, supra, 236 Ga. App. at 701. A tenant will be precluded from recovery, however, as a matter of law against the landlord when

he or she has equal or superior knowledge of the risk and fails to exercise ordinary care for his or her own safety. Id. at 702.

That Brookview decided to terminate all security measures, without telling the residents, shows that Brookview's knowledge of that potential danger was superior to Mr. Pantoja's, who apparently only complained that he was not receiving the security for which he was paying. Thus, a jury must determine whether Brookview's decision to terminate security was unreasonable in light of the known risk of harm. *Jackson v. Post Properties*, supra, 236 Ga. App. at 704 (5). The trial court thus properly ruled that the plaintiffs put forward evidence sufficient to survive summary adjudication. *Mason v. Chateau Communities*, 280 Ga. App. 106 (633 SE2d 426) (2006).

4. Brookview also contends the facts do not warrant the imposition of punitive damages.

> Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

OCGA § 51-12-5.1 (b). The rule in this State is "that something more than the mere commission of a tort is always required for punitive damages. There must be circumstances of aggravation or outrage. There is general agreement that, because it lacks this element, mere negligence is not enough." (Citation and punctuation omitted.) *Walker v. Sturbridge Partners*, 221 Ga. App. 36, 40 (4) (470 SE2d 738) (1996).

We are not presented with mere negligence here. Instead, the evidence is such that a jury could infer that Brookview intentionally stopped providing security without determining whether security was needed, did not notify the tenants that it had stopped security, and continued to charge for security thereby inducing the tenants to believe that security was still being provided. Under this evidence, a jury question is presented on whether Brookview's actions exhibited "that entire want of care which would raise the presumption of conscious indifference to consequences" of its actions so as to authorize an award of punitive damages. Therefore, the trial court did not err by denying summary judgment to Brookview on Suarez's punitive damages claims.

*Judgment affirmed. Johnson, P. J., Miller, Ellington and Bernes, JJ., concur. Andrews, P. J., and Blackburn, P. J., dissent.*

ANDREWS, Presiding Judge, dissenting.

The majority holds that Brookview's abandonment of the security measures undertaken by its predecessor amounts to a breach of a "contractual duty" sufficient, without any showing of actual negligence, to defeat Brookview's motion for summary judgment (p. 94). This flouts longstanding precedent, quoted by the majority, that the breach of an assumed duty is actionable *only* " '*if* . . . it also violates a duty owed to [a] plaintiff *independent of contract* to avoid harming him' " (p. 94, emphasis supplied, quoting *Orkin Exterminating Co. v. Stevens*, 130 Ga. App. 363, 365 (203 SE2d 587) (1973)). Moreover, though it is true that the tenants of this community "believed that they were *paying* for security" (p. 92, emphasis supplied), undisputed testimony shows that the plaintiff in this case *knew* that security was no longer being provided. Because nothing in the record supports an inference that the harm Pantoja suffered was foreseeable, and because nothing that Brookview did or failed to do could have reasonably misled Pantoja into acting with less care on the night of his death, I dissent.

The majority holds that because Brookview continued to charge its tenants the same $5 monthly security fee charged by its predecessor even after it discontinued the security measures undertaken by that predecessor, Brookview may be held liable for damages arising from a tort occurring in the wake of that discontinuance. Georgia law holds otherwise. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991), is familiar to every student of the principles governing a grant of summary judgment. Id. (where a defendant shows an absence of "evidence sufficient to create a genuine issue as to any essential element of plaintiff's claim, that claim tumbles like a house of cards"). It is less well known that the Supreme Court of Georgia articulated these principles as it affirmed a grant of summary judgment to a landowner on the question whether he had negligently undertaken security in a high-crime area:

> A landowner does not become an insurer of safety by taking some security precautions on behalf of invitees. Undertaking measures to protect patrons does not heighten the standard of care; and taking some measures does not ordinarily constitute evidence that further measures might be required. *In all cases, a landowner is not required to do more than is reasonable for the protection of invitees.*

(Footnote omitted; emphasis supplied.) Id. at 494-495.

Even assuming that the charging of a security fee amounts to an undertaking to provide security, it is simply wrong to hold that such an undertaking can abrogate the fundamental rule that a landowner

can be held liable only for foreseeable harms occurring on its property. *Lau's Corp.*, supra; *Ritz Carlton Hotel Co. v. Revel*, 216 Ga. App. 300, 304 (2) (454 SE2d 183) (1995) (undertaking measures to protect patrons does not heighten standard of care and is immaterial in light of fact that the particular crime was unforeseeable). When the majority imposes the possibility of liability on this landowner, it positively discourages all landowners from taking feasible measures to protect their tenants and visitors from harm, since those measures could not be discontinued without raising an inference that reasonable care is no longer being taken. See *Doe v. Prudential-Bache/A. G. Spanos Realty Partners*, 222 Ga. App. 169, 173-175 (2), (3) (474 SE2d 31) (1996) (affirming grant of summary judgment where record showed no evidence of substantially similar incidents, and rejecting plaintiff's theory that landowner had breached an assumed duty).

It is true that when a plaintiff reasonably relies on a landowner's assurances or acts, harm resulting from such reliance may be actionable. As the Supreme Court noted in *Lau's Corp.*:

> If a defendant undertakes to do more for the benefit of another person than the law requires, he or she may be held liable if he or she acts unreasonably or makes the situation worse, by increasing the danger, *or by misleading the plaintiff into belief that it has been removed*, or by depriving the plaintiff of the possibility of help from other sources, etc.

(Emphasis supplied.) *Lau's Corp.*, supra at 495, n. 2. The majority pursues this scenario when it asserts that Brookview's practice of continuing to charge its tenants for security, coupled with its failure to tell them that it had in fact been discontinued, misled them into the false belief that security was still being provided, with any danger from intruder crime thus reduced or removed. In this case, however, the uncontroverted testimony of Pantoja's own daughter proves that such circumstances are absent:

> Q. When did you change your mind [concerning the safety of the trailer park]?
> A. Well, I had some concerns the last month [before his death] at the first of February because *my father came to me with some complaints about being charged for security and not being provided that security. . . .*
> Q. But he realized that there was no security out there; is that what you're saying?
> A. Apparently that had been the complaint of a number of the persons living in the park. . . .

> Q. [D]id you take that issue [of security] up with anyone at Augusta Estates?
>
> A. My father was an independent person. I was his daughter and not his mother, so *I suggested simply that he needed to do that.*

Pantoja not only knew that security had been discontinued, but was encouraged by his own daughter to voice his dissatisfaction with continuing to pay for it. From February 1 forward, then, including the night on which he died, Pantoja could not have reasonably relied on security he knew was not there. See *Doe v. Prudential-Bache*, supra at 174-175 (3) (plaintiff could not reasonably rely on security to prevent all harms where the defects of the parking garage where she was attacked were open and obvious).

Recalling that "[i]n all cases, a landowner is not required to do more than is reasonable for the protection of invitees," *Lau's Corp.*, supra at 495 (3), and thus responding to the familiar question whether the harm Pantoja suffered was foreseeable, this Court must reverse the trial court's denial of summary judgment because no substantially similar crime had occurred on the property before the attack resulting in Pantoja's death. See *Agnes Scott College v. Clark*, 273 Ga. App. 619, 622 (1) (616 SE2d 468) (2005) (college properly granted summary judgment where no violent crimes had been reported in parking lot from which plaintiff was abducted); *Baker v. Simon Property Group*, 273 Ga. App. 406, 407-408 (1) (614 SE2d 793) (2005) (mall owner properly granted summary judgment where shooting of patron in parking lot was not foreseeable); *Woods v. Kim*, 207 Ga. App. 910, 911 (429 SE2d 262) (1993) (store owner properly granted summary judgment where there was no evidence that his security efforts in a high-crime area were below a reasonable standard of care or misled the plaintiff into the belief that the danger had been removed). I therefore dissent.

I am authorized to state that Presiding Judge Blackburn joins in this dissent.

DECIDED MARCH 29, 2007 —
RECONSIDERATION DENIED APRIL 13, 2007 —

*Charles C. Mayers, Warren C. Grice*, for appellant.

*Shepard, Plunkett, Hamilton, Boudreaux & Tisdale, Todd M. Boudreaux, John A. Tisdale, Gorby, Reeves & Peters, Michael J. Gorby*, for appellees.