A97A1185. POST PROPERTIES, INC. v. DOE.
(495 SE2d 573)

SMITH, Judge.

Jane Doe was raped inside her apartment and filed this action against Post Properties, the owner and operator of the apartment complex where she lived. She claimed Post was negligent because the criminal conduct of her assailant was foreseeable and could have been prevented if Post had kept the premises safe. Post filed a motion for summary judgment, which was denied by the trial court on the basis of this Court's holding in *Walker v. Sturbridge Partners, Ltd.*, 221 Ga. App. 36 (470 SE2d 738) (1996), aff'd, 267 Ga. 785 (482 SE2d 339) (1997). We granted Post's application for interlocutory review. Because we conclude that the record is devoid of competent evidence that the attack was proximately caused by any act or omission of Post, we reverse the denial of Post's motion.

The following facts concerning the attack are not disputed. Doe was a long-term resident of Post Brook apartments at the time of the attack. She had moved into a third-floor apartment in 1984 but moved to a ground floor apartment in December 1990. In addition to the front door, which could be locked with a deadbolt lock, the apartment had a sliding back door. The sliding door was equipped with a manufacturer's lock and a device called a "charlie bar,"[1] which Post installed on the door.

Sometime during the day prior to her attack, Doe opened her back door for ventilation because she had fumigated the apartment. She left the door open for an unspecified period of time before closing it prior to falling asleep around 8:00 p.m. Doe did not use the charlie bar after closing the door, and she was unsure whether the manufacturer's lock on the door engaged when she closed the door. She acknowledged during her deposition that the sliding door "was

---

[1] A "charlie bar" was described by one witness as an aluminum piece of tubing installed between the jamb and the interior sliding panel of the door. The witness stated that a pin is used to secure the bar to "keep it from riding up in case somebody shakes it."

unlocked in the sense that I don't think the lock that I shut clicked. I didn't double-check it." She "knew to double-check it always because sometimes it didn't catch, and [she] heard the click and that's not enough. You have to double-check those locks." When asked whether she told anyone that the door was not locked, Doe replied that "if I said it was just unlocked, what I was saying was that I didn't lock it properly." Doe could not remember whether her windows were locked that night.

After Doe fell asleep, she was awakened at knifepoint by a man, who demanded her purse or money. He then raped her and left the apartment. The assailant apparently was never apprehended. It is undisputed that no signs were found of forced entry into the apartment, and the record does not show how the assailant gained entrance onto the property.

On motion for summary judgment, Post pointed to several facts in support of its contention that Doe should not recover, including the following: Doe's acknowledgment, by signing a security agreement, that she would inspect her door locks and report repair needs and her awareness that Post did not guarantee her personal safety; the fact that she never reported to Post any problems with her locks; her failure to double check the sliding door and to use the charlie bar on the night of the attack; the lack of signs of forced entry; and the fact that the assailant was unknown and appeared to have gained entry through Doe's unlocked back door. Post argued it was entitled to summary judgment on several grounds, most notably that the criminal attack was not foreseeable as a matter of law, since no other crimes against people had occurred in the complex. In response to Post's motion, arguing that material issues of fact existed, Doe relied in large part on opinion testimony of a witness who had worked in various capacities in law enforcement. In his affidavit, the witness proposed several means by which the assailant could have gained access to the property and to Doe's apartment and alleged that Post was negligent in the following areas with regard to safety: (1) lighting; (2) landscape; (3) locking devices; (4) fencing; (5) entry gate system; (6) security officers; (7) key control; and (8) failure to warn.

After the trial court denied Post's motion and after we granted Post's petition for interlocutory review, the Supreme Court issued its affirmance in *Sturbridge Partners*, supra. That case is significant in many respects, including its approach to the issue of foreseeability of criminal attacks in premises liability cases. The Supreme Court decision in *Sturbridge Partners* specifically overruled *Savannah College of Art &c. v. Roe*, 261 Ga. 764 (409 SE2d 848) (1991), insofar as *Roe* stood for the proposition that crimes against property "cannot establish the foreseeability of a brutal sex crime as a matter of law." *Sturbridge Partners*, 267 Ga. at 786.

The Supreme Court found the issue in *Sturbridge Partners* to be "not the foreseeability of the rape itself, but whether Sturbridge had actual knowledge of the prior burglaries and, because of that knowledge, should have reasonably anticipated the risk of personal harm to a tenant which might occur in the burglary of an occupied apartment. [Cits.]" 267 Ga. at 787. Going on to find that the complex did have actual knowledge of two burglaries prior to the rape, the court concluded that "it was reasonable to anticipate that an unauthorized entry might occur while an apartment was occupied and personal harm to a tenant could result." (Footnote omitted.) Id. Based on this conclusion, the court stated that "evidence of the prior burglaries was sufficient to give rise to a triable issue as to whether or not Sturbridge had the duty to exercise ordinary care to safeguard its tenants." Id. But as noted by the Supreme Court, it did not reach the issue of whether Sturbridge failed to exercise ordinary care, because neither the trial court nor this Court had considered the issue. Id. at n. 2.

We find no denial by Post of knowledge of prior break-ins into its apartments. In fact, it appears that Post did have knowledge of other break-ins. We are bound by the Supreme Court's pronouncement in *Sturbridge Partners* that a "triable issue" may have arisen with regard to whether Post had a "duty to exercise ordinary care to safeguard its tenants." Id. at 787. But even in light of *Sturbridge Partners*, summary judgment in Post's favor was authorized.

A majority of the Supreme Court in *Sturbridge Partners* addressed the issue of when an attack against a person is foreseeable and "laid to rest the artificial notion that a crime against a person could never be foreseen by previous crimes against property." *Doe v. Prudential-Bache/A.G. Spanos Realty Partners, L.P.*, 268 Ga. 604, 605 (492 SE2d 865) (1997). Importantly, however, *Sturbridge Partners* did not eliminate well-established principles concerning landlords' responsibilities toward tenants. Although the dissent in *Sturbridge Partners* strongly protested that the result of that case made "landowners virtual insurers of those who come on their property," *Sturbridge Partners*, supra at 787, it is clear from a reading of the majority opinion that the majority recognized "that a landlord does not insure tenants' safety against third-party criminal attacks." Id. at 785. *Sturbridge Partners* does *not* state that every case in which evidence exists indicating foreseeability of a criminal attack must proceed to a jury; such a statement might well make landowners insurers.

Nor does *Sturbridge Partners* purport to modify the rules concerning parties' burdens on motion for summary judgment, as succinctly set out in *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991): "To prevail at summary judgment under OCGA § 9-11-56, the

moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A *defendant* may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. . . . A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. OCGA § 9-11-56 (e)." Id.

In *Lau's Corp.*, plaintiffs sought damages following a criminal attack in the parking lot adjacent to defendant's property. The Supreme Court reiterated the rule that a landowner is not an insurer of its invitees' safety, id. at 492, and recognized the four essential elements of a negligence claim: a duty to protect others against unreasonable risks; a breach of that duty; "a reasonable close causal connection between the conduct and the resulting injury"; and damage. Id. The court found that plaintiffs failed to present evidence showing a breach of duty in response to the evidence submitted by the defendant, id. at 494 (2), and reiterated the rule that "summary judgment is appropriate when the court, viewing all the facts and reasonable inferences from those facts in a light most favorable to the non-moving party, concludes that the evidence does not create a triable issue as to each essential element of the case." Id. at 495 (4). The evidence did not create a triable issue as to an essential element of plaintiffs' case, and the court held that defendant was entitled to summary judgment. Id.

Here, too, the evidence is insufficient to show at least one essential element of Doe's case: causation. It is true that Doe's witness proposed several reasons why he believed Post to have been negligent, as well as possible means by which Doe's assailant could have gained access to the apartment complex and her apartment. He stated, for example, that safety and security conditions on the property such as landscaping, lighting, fencing, the entry gate system, and vehicle access allowed criminals easy access to the common area of the complex. The witness made further allegations concerning master key control, substandard locking devices, and failure to warn of previous criminal activity, conditions that could have permitted easier access to individual apartments.

But these allegations are only guesses as to how the unknown

assailant *might have* accessed the property and how he *might have* entered Doe's apartment. Although Doe's witness provided several means by which an assailant *could have* gotten onto the property and hidden, even giving Doe the benefit of all reasonable inferences, the record is silent as to how the assailant entered the complex on the night of Doe's attack. We can only surmise that he was unlawfully on the complex premises. Doe's own witness acknowledged he did not know the direction from which the assailant entered the property or his means of entering the property. While the assailant *could* have walked or driven past the barrier arm, rolled under the fence, or walked through an opening in the fence, as acknowledged by Doe's witness, he *could* also have been another resident, guest, or other person authorized to be on the property. As for the witness's concerns about employing a courtesy officer, again, we can only speculate that the assailant was unlawfully on the property and that a different type of security patrol might have prevented Doe's assault. In short, without any evidence concerning how the assailant entered the complex, nothing supports Doe's expert's allegation that heightened security by any of the means concerning entry onto the property would have prevented the attack. Compare *Walker v. St. Paul Apts.*, 227 Ga. App. 298 (489 SE2d 317) (1997) (assailant entered front door of apartment complex in high crime area when security guard, who had no key to front door and could not lock front door at night, left post).

Further, the only evidence in the record concerning the assailant's entry into Doe's apartment is that entry was unforced. He *could* have entered through the front door, perhaps with a master key. But Doe's own witness admitted that he had no knowledge that the master key was missing or misused in July 1992, or that prior unforced break-ins resulted from misuse of the master key. Alternatively, the assailant *could* have entered through a window or through the back sliding door, which Doe acknowledged may not have been locked on the night of the attack. We also note that Doe never reported any problems with the locks to Post management, and her witness acknowledged that no evidence suggested that the door was improperly adjusted. And although Doe's witness testified in his affidavit that a "pin lock" was needed on the door, whether such a lock would have prevented entry into Doe's apartment is speculative, since Doe has not shown how the assailant entered her apartment. Additionally, it is important to remember that Doe did not utilize the extra locking device, the charlie bar, provided to her by Post. Indeed, Doe's witness acknowledged during his deposition that safety devices do not increase security when tenants do not use them. As for the allegation that Post failed to warn of other break-ins and criminal activity, Doe has not established that her assault was proximately

caused by this failure.

It is significant that Doe had knowledge of criminal activity that occurred at the complex when she chose to move into the ground floor apartment. She knew there had been a prior break-in at the apartment next door. And although she stated she moved into the ground floor based on the assurances of an agent of Post that the apartments were safe, Doe does not dispute that she signed a security acknowledgment in which she agreed that safety was her responsibility. The lease signed by her also contained an integration clause reciting that it and any attached addenda constituted "the entire agreement between the parties and no oral statements shall be binding."

In summary, Doe's claim is defeated by her failure to produce evidence concerning how her assailant entered the property, whether he was lawfully there, and how he entered her apartment. The evidence presented by her does not sufficiently link any of the array of her witness's allegations to the activity that occurred on the night of Doe's attack. To conclude that those allegations show a sufficient link of causation between Post's acts or omissions and Doe's attack would require a jury to engage in pure speculation and guesswork. This is neither required nor allowed in this state. "Guesses or speculation which raise merely a conjecture or possibility are not sufficient to create even an inference of fact for consideration on summary judgment. [Cits.]" *Brown v. Amerson*, 220 Ga. App. 318, 320 (469 SE2d 723) (1996). A plaintiff "must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough." *Niles v. Bd. of Regents &c. of Ga.*, 222 Ga. App. 59, 61 (2) (473 SE2d 173) (1996). See also *Rampell v. Williams*, 217 Ga. App. 292, 294 (457 SE2d 224) (1995); *Hickey v. Vulcan Materials Co.*, 214 Ga. App. 649 (448 SE2d 714) (1994); *Anneewakee, Inc. v. Hall*, 196 Ga. App. 365, 367 (1) (396 SE2d 9) (1990).[2] Doe simply failed to present competent evidence that her attack was proximately caused by any act or omission of Post. Because proximate cause is an essential element in a negligence claim, *Lau's Corp.*, supra, and because Doe failed in her burden of presenting competent evidence of a triable issue of fact, the trial court erred in denying Post's motion for summary judgment.

We recognize that we reversed the grant of summary judgment to the defendant apartment owner on plaintiff's OCGA § 51-3-1 claim in *Doe v. Briargate Apts.*, 227 Ga. App. 408 (489 SE2d 170) (1997).

---

[2] We note that *Niles* and *Anneewakee* are cases addressing the propriety of granting a motion for directed verdict, rather than a motion for summary judgment. But the principle relied on in those cases — that a finding of causation cannot be based on speculation — is equally applicable here. See generally *Hickey*, supra.

There, too, plaintiff was sexually assaulted in her own apartment. We found previous attacks in the complex, including one on Doe herself, to be substantially similar. See id. at 409-410. Also in *Briargate Apts.*, as here, allegations concerning defendant's security were raised, and we concluded that those allegations raised triable issues for the jury. Id. at 410. But that case is not binding precedent. The judgment was a "general concurrence by less than a majority of the Judges." Court of Appeals Rule 33 (a).

More importantly, in *Briargate Apts.*, the method by which the intruder gained entry was shown in detail, and more than mere speculation or conjecture provided a basis for showing a factual issue as to causation. Unlike the record in this case, the evidence in *Briargate Apts.* showed how the assailant entered plaintiff's apartment — through a second-story window by means of a ladder after prying part of the window pane away. Id. at 408. And plaintiff established a direct causal link between the lack of security and the means of entry. We stated that a jury could conclude that "the length and extent of any patrols conducted for the tenants' safety were inadequate in light of defendant's knowledge of the previous attack on plaintiff and the very fact that the patrols of the premises on the date in question did not discover any intruder on a ladder trying to enter plaintiff's apartment, or even the ladder itself after the intruder allegedly had made his entry." Id. at 410.

This case also is distinguished from *Shoney's, Inc. v. Hudson*, 218 Ga. App. 171 (460 SE2d 809) (1995). In that case we upheld the denial of summary judgment to Shoney's, concluding that substantially similar attacks had occurred on the premises, raising a triable issue of fact concerning the foreseeability of a criminal attack against an invitee. Id. at 174. We also relied in part on the affidavit testimony of plaintiff's expert, who testified concerning Shoney's failure to provide uniformed security patrols for its customers in the parking lot at night. Id. But this testimony was narrowly limited to specific security issues, as opposed to a laundry list of reasons why Shoney's *may have been* negligent, and the testimony was directly relevant to the manner in which plaintiff in that case was attacked. In contrast, the evidence in this case is silent or at best speculative, both as to how Doe's assailant entered the property *and* Doe's apartment. Conjecture that one of a wide range of security measures *might* have prevented the assault cannot serve to prevent summary judgment in favor of Post.

*Judgment reversed. McMurray, P. J., and Beasley, J., concur in the judgment only.*

ON MOTION FOR RECONSIDERATION.

Doe has raised several contentions on motion for reconsideration, one of which we find necessary to address. She argues that the issue of whether she submitted sufficient evidence of causation was not preserved for our review because the issue was not raised below or ruled on by the trial court. This issue is indeed a difficult one with which we grappled before issuing our opinion and one that is deserving of discussion.

Our decision to reach the issue of causation was based on the principle that this Court reviews the denial of a defendant's motion for summary judgment de novo, construing all reasonable inferences in a light most favorable to the nonmoving party. See, e.g., *Hillcrest Foods v. Kiritsy*, 227 Ga. App. 554 (489 SE2d 547) (1997). It is true that the issue of causation was not explicitly raised as an argument below. But the issue was implicitly raised by the evidence before the trial court on Post's motion. That evidence implicitly — and inescapably — leads to the reasonable inference that Doe did not and could not show the essential element of proximate cause below. Even construing the evidence in Doe's favor, the evidence therefore showed below and shows here the absence of an essential element of Doe's claim. She failed below to supply any evidence showing the existence of a genuine factual issue with respect to causation, and summary judgment in Post's favor was therefore warranted under *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

DECIDED DECEMBER 3, 1997 —
RECONSIDERATION DENIED DECEMBER 19, 1997

*Berlon & Timmel, Michael R. Berlon*, for appellant.
*Jewett & Clark, C. Lawrence Jewett, Jr., Robin F. Clark*, for appellee.