A01A0774, A01A0775, A01A0776. SUDLER et al. v. CAMPBELL et al. (three cases).
(550 SE2d 711)

RUFFIN, Judge.

Appellants Howard Sudler, Mary Sudler, the Sudler Partnership, the Sudler Corporation, and Pison Partners, L.P. sued the City of Atlanta and several city officials ("the City appellees") for trespass, interference with contractual and business relations, violation of "federal home provisions," equal protection violations, breach of contract, and conspiracy to defraud. The City appellees moved for summary judgment on each of appellants' claims. In addition, they asserted that Pison Partners ("Pison") was the only real party in interest and moved to dismiss the claims of Howard Sudler, Mary Sudler, the Sudler Partnership, and the Sudler Corporation.

The trial court granted the City appellees' motions and also denied as moot appellants' motion to set aside a foreclosure con-

---

[11] *Tarvestad v. State*, 261 Ga. 605, 606 (409 SE2d 513) (1991).

ducted by the City of Atlanta. Appellants challenge each of these rulings on appeal. For reasons discussed below, we affirm.

### Case No. A01A0776

1. In Case No. A01A0776, appellants attack the trial court's grant of summary judgment to the City appellees. "In reviewing the grant or denial of summary judgment, a de novo standard of review is applied, and we view the evidence with all reasonable inferences and conclusions in favor of the party opposing the summary judgment."[1]

Viewed in this manner, the record shows that Howard and Mary Sudler were partners in the Sudler Partnership, which, in turn, was the original general partner of Pison. The Sudler Corporation later became Pison's general partner.

In August 1994, the United States Department of Housing & Urban Development ("HUD") auctioned an apartment complex in Fulton County ("the property"). The Sudler Partnership submitted the winning bid of $1,500,000 and planned to rehabilitate the housing development. The City of Atlanta became interested in the project, which officials thought would bring needed affordable housing to the area. After the auction, but before the Sudler Partnership acquired the property, the City's Urban Residential Finance Authority ("URFA") adopted an "inducement resolution" setting forth "its official commitment, to issue . . . Bonds . . . in an amount of approximately $20,000,000 prescribed by [the Sudler Partnership] and to expend or loan the proceeds thereof to finance the costs of the [property's development]."

The Sudler Partnership scheduled the property closing for December 1994. Before the closing, URFA issued another resolution reducing the bond commitment to $15,000,000 and indicating that Pison had replaced the Sudler Partnership as developer. The City also loaned Pison $1,500,000 to acquire the property, which Pison purchased on December 22, 1994. Pison gave the City a deed to secure debt, and the loan documents required that the City and URFA approve various aspects of the renovations. In addition, Pison agreed to repay the loan by December 1, 1995.

Apparently, the redevelopment did not proceed as planned. According to Howard Sudler, he had difficulty obtaining necessary approvals from the City and never received the bond financing discussed in URFA's resolutions. On November 29, 1995, Pison asked the City for a six-month extension on the $1,500,000 note. Pison received no response and did not repay the loan by the December 1,

---

[1] (Punctuation omitted.) *McBride v. Brown*, 246 Ga. App. 149 (538 SE2d 863) (2000).

1995 due date. The City's counsel subsequently informed Pison that it was in default.

In March 1996, the City began advertising for an April foreclosure sale on the property. Prior to the sale, the City and Pison entered into a Forbearance Agreement, under which the City agreed not to foreclose before July 1, 1996. In addition, Pison, Howard Sudler, the Sudler Partnership, and the Sudler Corporation signed a Covenant Not to Sue, in which they agreed not to

> institute any action or otherwise assert against the CITY OF ATLANTA, its officers, directors, agents, [or] employees . . . any rights, claims, demands, actions, causes of action, or suits, whether in law, equity, or otherwise, whether in contract, tort, or otherwise, or any suit of any kind or nature whatever, now accrued or hereafter to accrue, as the result of or directly or indirectly related to any damages, known or unknown, foreseen or unforeseen, manifested or not yet manifested, arising out of or otherwise related to (a) the loan . . . made by the City of Atlanta to Pison Partners, L.P. on December 22, 1994, in the principal amount of $1,500,000; or (b) the property.

The Covenant Not to Sue was attached as an exhibit to and *explicitly incorporated in* the Forbearance Agreement.

Despite this compromise, problems with the project continued. In June 1996, the City scheduled a foreclosure sale for July 2, 1996. On July 1, however, Pison filed for bankruptcy under Chapter 11 of the United States Bankruptcy Code, automatically staying the foreclosure. The City subsequently requested relief from the stay. On May 20, 1997, the bankruptcy court lifted the stay, and the City foreclosed in July 1997. Pison's bankruptcy petition was later dismissed.

On June 27, 1997, appellants filed this action alleging that the City appellees (1) conspired to trespass on the property, (2) interfered with appellants' contractual and business relations regarding the redevelopment project, (3) violated the Cranston-Gonzalez National Affordable Housing Act, (4) violated appellants' equal protection rights, (5) breached certain contracts, and (6) fraudulently induced appellants to purchase the property and enter agreements with the City.

In their motion for summary judgment, the City appellees argued that appellants' claims were barred by res judicata and, alternatively, that appellants Pison, Howard Sudler, the Sudler Partnership, and the Sudler Corporation had released the City appellees from all claims. The trial court agreed, granting summary judgment on both grounds. Because we find that the Covenant Not to Sue pre-

cludes the claims of each appellant except Mary Sudler,[2] we need not reach the res judicata issue.

On appeal, appellants do not question the scope of the Covenant or its application to all claims against the City appellees. They argue instead that "they were fraudulently induced into entering the [Forbearance Agreement] (and the [Covenant Not to Sue] therein)," raising factual questions as to the validity of the release. Specifically, Howard Sudler testified that appellants entered the Covenant Not to Sue based on assurances from the City's counsel that the City would work with appellants in developing the property and securing bond financing and that appellants "would have a clear legal claim against the City if the City or URFA impeded [their] financing in any way or failed to cooperate with any reasonable proposal."[3]

The trial court rejected appellants' fraudulent inducement argument, finding summary judgment appropriate because the Covenant provided "that '[t]he Covenantors . . . do not rely on any inducements, promises or representations made by the Covenantee, or its counsel not hereinabove expressly set forth in writing.'" We agree with the trial court.

Parties claiming fraudulent inducement have two remedies: rescind the contract as voidable or affirm the contract and sue for damages.[4] A party that rescinds is not limited by the contract terms.[5] If, however, the party decides to affirm and sue on the contract, the contract terms control, and the party is bound by any merger clause or disclaimer.[6]

Appellants have cited no evidence that they rescinded any agreement in this case. Furthermore, although the claims in appellants' exceedingly lengthy complaint are not completely clear, their appel-

---

[2] Mary Sudler did not enter into the Covenant Not to Sue.

[3] On appeal, appellants also assert that they were "induced" to enter the Covenant because the City promised in the Forbearance Agreement not to commence foreclosure proceedings or exercise any other rights or remedies against the property until after July 1, 1996. According to appellants, the City breached this agreement by advertising the upcoming foreclosure in June 1996 publications and writing letters in May 1996 about the foreclosure. Appellants, however, have presented no evidence that they entered the Forbearance Agreement or Covenant based on any representations or understandings about how or when the City would discuss or advertise the foreclosure. At most, Howard Sudler testified that appellants entered these contracts because of the City's promise to extend the loan until — and not foreclose before — July 1, 1996, a promise the City fulfilled. Furthermore, appellants have pointed to no evidence that the City made the promise to delay foreclosure proceedings with a present intention not to perform or with knowledge that the forbearance would not take place, as required to support fraudulent inducement. *Lively v. Garnick*, 160 Ga. App. 591, 595-596 (3) (287 SE2d 553) (1981).

[4] See *Orion Capital Partners v. Westinghouse Elec. Corp.*, 223 Ga. App. 539, 542 (2) (b) (478 SE2d 382) (1996); *del Mazo v. Sanchez*, 186 Ga. App. 120, 125 (366 SE2d 333) (1988).

[5] *Orion Capital Partners*, supra.

[6] Id.; see also *Markowitz v. Wieland*, 243 Ga. App. 151, 153 (1) (532 SE2d 705) (2000).

late brief clarifies their intent to sue in contract for breach of the Forbearance Agreement, which explicitly incorporates the Covenant Not to Sue. All appellants except Mary Sudler apparently claim a right to sue for this alleged breach. According to appellants, "[i]t is the breach of [an] implied covenant of good faith and fair dealing in the [Forbearance Agreement] that the [a]ppellants maintain serve as the proof of . . . one of the breaches of contract between the City [a]ppellees and the [a]ppellants." Thus, by appellants' own admission, they are suing for breach of the Forbearance Agreement.[7]

By alleging that the City appellees breached the Forbearance Agreement, which specifically incorporates the Covenant Not to Sue, appellants elected their remedy — they chose to affirm the contract. They are now bound by its terms, including their explicit agreement that they would not file suit against the City or its officers or employees. Appellants are further bound by their statement in the Covenant that, in entering the agreement, they did not "rely on any inducements, promises, or representations . . . not hereinabove expressly set forth in writing." The presence of this merger clause is determinative and "precludes any reliance on oral representations."[8] Accordingly, the trial court properly awarded the City appellees summary judgment as to claims brought by Pison, Howard Sudler, the Sudler Partnership, and the Sudler Corporation.

### Case No. A01A0774

2. Given our decision in Division 1, the only possible claims remaining against the City appellees are those brought by Mary Sudler. The trial court, however, dismissed Mary Sudler's claims, finding that she was not a real party in interest under OCGA § 9-11-17.

Although Mary Sudler challenges that ruling in Case No. A01A0774, her brief does not, in any way, establish that she is a real party in interest in this case. It outlines the interest that Howard Sudler, the Sudler Partnership, and the Sudler Corporation allegedly have, but barely mentions Mary Sudler in her individual capacity. Similarly, appellants' lengthy complaint merely identifies Mary

---

[7] The quoted statement in the preceding sentence appears in a brief submitted by Howard Sudler, Mary Sudler, the Sudler Partnership, and the Sudler Corporation. Pison was not a party to the brief, which relates to the real party in interest issue. Nevertheless, all appellants, including Pison, make the same breach of contract allegations in the complaint. It follows that Pison also seeks damages for breach of the Forbearance Agreement.

[8] *Markowitz*, supra at 153; see also *Owens v. Union City Chrysler-Plymouth*, 210 Ga. App. 378, 380 (436 SE2d 94) (1993) ("[Plaintiff's] actions resulted in an affirmation of the . . . contract, and by virtue of that affirmation of the contract containing a merger clause, she was estopped from asserting any reliance upon the alleged misrepresentation made prior to execution of the contract.").

542

Sudler as a partner in the Sudler Partnership, notes her Delaware residence, and asserts that she and Howard Sudler "won the [HUD] auction bid" for the subject property.

Mary Sudler's involvement in this suit stems from her partnership interest in the Sudler Partnership. As we have previously held, however, "[f]or the suit to survive as to [her], there must be a relationship between [her] and the tortfeasor or contract-breacher independent of that derived as a partner."[9] No such relationship is alleged in the complaint or asserted on appeal. Accordingly, the trial court properly dismissed Mary Sudler's claims against the City appellees.[10]

### Case No. A01A0775

3. In their final case on appeal, appellants challenge the trial court's denial of their motion — filed against the City — to set aside the foreclosure on the subject property. The trial court dismissed this motion as moot after granting summary judgment to the City. In Division 1, we affirmed that summary judgment award as to claims brought by Pison, Howard Sudler, the Sudler Partnership, and the Sudler Corporation. In Division 2, we affirmed the trial court's dismissal of Mary Sudler's claims against the City. Consequently, no claims involving the City remain, and the trial court properly dismissed appellants' pending motion to set aside the foreclosure as moot.[11]

*Judgments affirmed. Johnson, P. J., and Ellington, J., concur.*

DECIDED JUNE 21, 2001 —
RECONSIDERATION DENIED JULY 13, 2001 — 

*Meriwether & Tharp, Patrick L. Meriwether, Robert L. Tharp*, for appellants.
*Weinstock & Scavo, Michael Weinstock, Thomas, Kennedy, Sampson & Patterson, Thomas G. Sampson, Monica E. Ewing, Lemuel H. Ward*, for appellees.

---

[9] *Goss & Goss Dev. Co. v. First Union Nat. Bank &c.*, 196 Ga. App. 436, 437-438 (2) (396 SE2d 19) (1990).
[10] Id. at 438.
[11] See *Richardson v. Simmons*, 245 Ga. App. 749, 750 (538 SE2d 830) (2000) (pending motion rendered moot by grant of summary judgment).