**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3668
_____

SANOFI-AVENTIS U.S., LLC;
MCKESSON CORPORATION;
AXA CORPORATE SOLUTIONS ASSURANCE;
CARRAIG INSURANCE LIMITED

v.

GREAT AMERICAN LINES, INC.;
M.V.P. LEASING, INC.;
DAVID J. RIEGER, JR.;
PILOT TRAVEL CENTERS LLC, t/a PILOT FLYING J

v.

PILOT TRAVEL CENTERS LLC, Third-Party Plaintiff

v.

AMED REY PARRA; ABIMAEL FUENTE; LUIS ANDRES FAIFE-RUIZ;
DAVID TOPAZ; JOHN DOES 1-5, Third-Party Defendants

AXA Corporate Solutions Assurance,

Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. Action No. 3-10-cv-02023)
District Judge: Hon. Michael A. Shipp
_____

Argued June 7, 2017

_____

Before: CHAGARES, GREENAWAY, JR., and VANASKIE, *Circuit Judges*

(Filed: December 6, 2017)

James P. Krauzlis, Esq.          [ARGUED]
Casey & Barnett, LLC
305 Broadway Suite 1202
New York, NY 10007

George N. Styliades, Esq.
Law Offices of George N. Styliades
214 West Main Street, Suite 105
Moorestown, NJ 08057
*Counsel for Appellant*

Jeffrey D. Cohen, Esq.          [ARGUED]
Paul D. Keenan, Esq.
Eric C. Palombo, Esq.
Keenan Cohen & Merrick
125 Coulter Avenue
Suite 1000
Ardmore, PA 19003
*Counsel for Appellees Great American Lines, Inc. and MVP Leasing, Inc.*

Matthew N. Fiorovanti, Esq.          [ARGUED]
Giordano Halleran & Ciesla
125 Half Mile Road, Suite 300
Red Bank, NJ 07701
*Counsel for Appellee Pilot Travel Centers, LLC*

_____

OPINION[*]
_____

VANASKIE, *Circuit Judge.*

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

This appeal concerns a dispute over liability for the theft of a shipment of pharmaceuticals (the "Freight") while it was in transit from the manufacturer, Sanofi-Aventis U.S., LLC, to the distributor, McKesson Corporation. McKesson's insurer, Appellant AXA Corporate Solutions Assurance, reimbursed McKesson for the loss and then filed a complaint, as McKesson's subrogee, against the trucking companies involved in the shipping—Appellees Great American Lines, Inc. ("GAL") and M.V.P. Leasing, Inc. ("MVP"), as well as the truck stop from which the Freight was stolen, Appellee Pilot Transportation Centers ("Pilot"). Against both GAL and MVP, AXA brought a claim for breach of contract and a claim under the Carmack Amendment, which imposes strict liability on motor carriers engaged in the interstate transportation of goods. *See* 49 U.S.C. § 14706. Against Pilot, AXA brought a claim of negligence.

The District Court ultimately determined that the contract governing shipment of the Freight waived liability under the Carmack Amendment.[1] The Court also determined that McKesson was not a party to the shipping contract, and AXA thus could not base its breach of contract claim on that agreement. Finally, the District Court concluded that AXA had not provided sufficient evidence to warrant a jury trial on the question of

---

[1] The District Court initially ruled that the Carmack Amendment waiver was not applicable to AXA. GAL and MVP successfully sought reconsideration of this ruling, and AXA appeals from the August 22, 2016 order granting summary judgment in favor of GAL and MVP following reconsideration.

whether allegedly lax security at the Pilot facility was a cause of the theft of the Freight. For the following reasons, we will affirm.[2]

## I.

Shipment of the Freight was made pursuant to an "Authorized Distribution Agreement" ("ADA") between Sanofi and McKesson. Under the terms of the ADA, Sanofi was responsible for arranging transportation, paying the transportation costs, and ensuring that the shipments were covered by comprehensive transit insurance. To fulfill its obligation to arrange for the shipment of the Freight to McKesson, Sanofi entered into a "Transportation Contract and a Quality Assurance Agreement" ("Transportation Contract") with GAL, who then entered into an Independent Contractor Services Agreement with MVP to provide the tractor trailer and driver for the shipment.

Generally, an agreement like the Transportation Contract would be governed by the Carmack Amendment, under which a "motor carrier" providing interstate transportation of goods for hire is "liable to the person entitled to recover under the receipt or bill of lading" for the "actual loss or injury to the property." § 14706(a)(1). The Transportation Contract, however, contains the following waiver of Carmack liability:

> Waiver: Pursuant to 49 U.S.C. 14101(b), the parties expressly waive any and all provisions of the ICC Termination Act of 1995, U.S. Code Title 49, Subtitle IV, Part B, and of regulations thereunder [the Carmack Amendment], to the

---

[2] The District Court denied AXA's motion for reconsideration of the summary judgment ruling in favor of Pilot on AXA's negligence claim. AXA appeals the adverse summary judgment and reconsideration decisions.

extent that such provisions conflict with the terms of this Contract or the parties' course of performance hereunder.

(App. 564.) The Transportation Contract further states that it "shall be binding upon and inure to the benefit of the parties hereto only." (App. 562.) The parties do not dispute that McKesson was not a party to the Transportation Contract.

Relating to the Freight in question here, Sanofi and GAL also signed a Truck Manifest, a one page document that contained no contractual terms. The Truck Manifest provided details for the delivery of the Freight and listed McKesson as the consignee.

Pursuant to these agreements, David J. Rieger, a truck driver hired by MVP, loaded the Freight at Sanofi's distribution site in Georgia for delivery to McKesson's distribution facility in Tennessee. While en route, Rieger stopped at a Pilot truck stop in Temple, Georgia, where he left the truck in the rear parking lot for about an hour. Upon returning to the parking lot, Rieger found that the truck was gone.

After the theft, AXA and Carraig Insurance Limited reimbursed McKesson for the value of the Freight, approximately $9 million. AXA seeks recovery of this amount from the transportation companies and Pilot.[3]

Following discovery, the parties filed cross motions for summary judgment. The District Court ultimately determined that the waiver of Carmack Amendment liability in the Transportation Contract was effective; that AXA, as McKesson's subrogee, was not a

---

[3] Sanofi and Carraig were also plaintiffs in this action, but their claims were dismissed by consent. The truck driver, Rieger, was named as a defendant, but he too was dismissed by agreement.

third-party beneficiary of the Transportation Contract; that AXA abandoned its breach of contract claim against MVP; that AXA failed to establish that MVP had entered into an implied bailment with respect to the Freight;[4] and that AXA had not presented sufficient evidence to warrant a jury trial on the question of whether any negligence of Pilot caused the theft of the Freight. AXA filed this timely appeal.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1332(a) and our jurisdiction arises under 28 U.S.C. § 1291. "We review an order granting summary judgment de novo, applying the same standard used by the District Court." *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010) (quoting *Nicini v. Morra*, 212 F.3d 798, 805 (3d Cir. 2000)). We will affirm a grant of summary judgment where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

## III.

AXA argues that the District Court erred in granting summary judgment to GAL and MVP on its Carmack Amendment and breach of contract claims. According to AXA, because McKesson was neither a party to, nor an intended beneficiary of, the Transportation Contract, the Carmack waiver should not apply. AXA also asserts,

---

[4] AXA had conceded that it could not establish an implied bailment.

arguably for the first time on appeal, that it should be permitted to pursue its breach of contract claims under the Truck Manifest.  With regard to its negligence claim against Pilot, AXA contends that the District Court erred in granting summary judgment as genuine disputes of material facts remain.  We will address each of these arguments in turn.

**A.**

As noted above, the Carmack Amendment governs liability of truckers and other carriers engaged in the interstate transportation of goods.  § 14706.  Pursuant to the statute, a "motor carrier" providing interstate transportation of goods for hire is strictly "liable to the person entitled to recover under the receipt or bill of lading" for the "actual loss or injury to the property."  § 14706(a)(1).

Despite this expansive reach of the Carmack Amendment, Congress has permitted carriers and shippers to opt out of Carmack's default rules:

> If the shipper and carrier, in writing, expressly waive any or all rights and remedies under this part for the transportation covered by the contract, the transportation provided under the contract shall not be subject to the waived rights and remedies and may not be subsequently challenged on the ground that it violates the waived rights and remedies.

§ 14101(b)(1).  The effect of a waiver is that "[t]he exclusive remedy for any alleged breach of a contract entered into under this subsection shall be an action in an appropriate State court or United States district court, unless the parties otherwise agree."  § 14101(b)(2).

7

As the District Court correctly concluded, the waiver in the Transportation Contract plainly precludes AXA from pursuing claims under the Carmack Amendment. The statute does not require that any consignee agree for the waiver to be effective. So long as the "shipper," i.e., Sanofi, and the "carrier," i.e., GAL, agree to the waiver, "*the transportation provided under the contract* shall not be subject to the waived rights and remedies." § 14101(b)(1) (emphasis added). Accordingly, AXA's Carmack Amendment claim is foreclosed by the waiver in the Transportation Contract.

**B.**

We also agree with the District Court that summary judgment is appropriate for AXA's breach of contract claims against GAL and MVP. On appeal, AXA abandons its argument that it was an intended beneficiary of the Transportation Contract and instead asserts that its claims arise under the Truck Manifest, which identifies McKesson as consignee and was signed by both Sanofi and GAL. Because AXA did not raise this argument in the District Court, it has been waived.

In its Second Amended Complaint, AXA based its contract claims entirely on the Transportation Contract, without mention of the Truck Manifest. In its memorandum in support of its motion for summary judgment, AXA stated that, if the District Court were to find that the Carmack waiver applied, "the exclusive remedy against GAL" would be "for breach of the Transportation Contract." (App. 785.) As the District Court's opinions clearly reflect, the Truck Manifest was used as evidence that AXA was an intended beneficiary of the other two contracts—an argument AXA has abandoned on appeal. "[A]rguments asserted for the first time on appeal are deemed to be waived and

8

consequently are not susceptible to review in this Court absent exceptional circumstances." *United States v. Petersen*, 622 F.3d 196, 202 n.4 (3d Cir. 2010) (quoting *United States v. Rose*, 538 F.3d 175, 179 (3d Cir. 2008) (citation omitted)). "This general rule serves several important judicial interests, protecting litigants from unfair surprise; 'promot[ing] the finality of judgments and conserv[ing] judicial resources'; and preventing district courts from being 'reversed on grounds that were never urged or argued' before [them]." *Tri-M Grp., LLC v. Sharp*, 638 F.3d 406, 416 (3d Cir. 2011) (quoting *Webb v. City of Phila.,* 562 F.3d 256, 263 (3d Cir. 2009) (internal citations and quotations omitted)). Because AXA did not raise the Truck Manifest argument before the District Court, it has been waived, and summary judgment is appropriate.

Even had the argument been preserved, summary judgment would still be appropriate. The Truck Manifest, though it does identify McKesson as the consignee to whom the Freight was to be delivered, does not contain any contractual terms. The Transportation Contract, on the other hand, clearly indicates that it "represents the entire agreement and understanding between the parties . . . with respect to the services to be performed hereunder, and neither party has relied or will rely upon any representation or agreement of the other except to the extent set forth herein." (App. 565.) The Transportation Contract states that it, and not the Truck Manifest or any other agreement, "shall solely determine the . . . liability for loss and damage." (App. 1885.) The Transportation Contract clearly precludes any possible breach of contract claims brought under the Truck Manifest.

9

## C.

Finally, we find that the District Court did not err in granting Pilot's motion for summary judgment on AXA's claim of negligence. "To prevail on a cause of action for negligence under Georgia law, the plaintiff must establish the essential elements of duty, breach of duty, proximate causation and damages." *Gordon v. Starwood Hotels & Resorts Worldwide, Inc.*, 821 F. Supp. 2d 1308, 1312-13 (N.D. Ga. 2011) (citing *Black v. Ga. S. & Fla. Ry. Co.*, 415 S.E.2d 705, 707 (Ga. Ct. App. 1992)). In order to prove causation, Georgia courts require that a plaintiff "introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result." *Post Props., Inc. v. Doe*, 495 S.E.2d 573, 578 (Ga. Ct. App. 1997) (quoting *Niles v. Bd. of Regents of Univ. Sys. of Ga.*, 473 S.E.2d 173, 176 (Ga. Ct. App. 1996)). "A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture . . . it becomes the duty of the court to grant summary judgment for the defendant." *Shadburn v. Whitlow*, 533 S.E.2d 765, 767 (Ga. Ct. App. 2000) (quoting *Avery v. Cleveland Ave. Motel, Inc.*, 521 S.E.2d 668, 669 (Ga. Ct. App. 1999) (citations omitted)).

Georgia courts have repeatedly found that plaintiffs have failed to produce evidence sufficient to find causation in situations where, as here, a plaintiff could not demonstrate how a crime occurred or who perpetrated it. For example, in *Post Properties*, a tenant sued her apartment owner after she was attacked in her apartment, and the court granted summary judgment as the tenant failed to "produce evidence concerning how her assailant entered the property, whether he was lawfully there, and

10

how he entered her apartment." *Post Props., Inc.*, 495 S.E.2d at 577. The court concluded that a "jury [would have] to engage in pure speculation and guesswork" to "conclude that [the tenant's] allegations show a sufficient link of causation between [the owner's] acts or omissions and [the tenant's] attack." *Id.* at 578. Similarly, the absence of evidence of how the thieves accessed the tractor trailer carrying the Freight, a jury finding of a causal link between Pilot's alleged negligence and the theft would be pure guesswork. Thus, the District Court properly granted summary judgment on AXA's negligence claim.

## IV.

For the foregoing reasons, we will affirm the order of the District Court granting summary judgment in favor of Pilot and in favor of GAL and MVP on AXA's breach of contract claims, and the order of the District Court granting the motions for reconsideration of GAL and MVP on AXA's Carmack Amendment claims.

11