**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**September 20, 2018**

# In the Court of Appeals of Georgia

A18A0994. PINNOCK v. KINGS CARLYLE CLUB APARTMENTS, LLC et al.

REESE, Judge.

Petrona Pinnock filed a fraud complaint against both Kings Carlyle Club Apartments, LLC, the owner of an apartment complex where she and her husband rented an apartment in October 2014, and LATPM, LLC, the company that managed the complex at that time (collectively, the "Appellees"). She appeals from the trial court's grant of summary judgment to the Appellees, arguing, inter alia, that the court erred in ruling that the merger clause in the lease precluded her from prevailing on her fraud claim. For the reasons set forth, infra, we affirm.

Viewed in the light most favorable to the Appellant, as the non-movant,[1] the record shows the following facts. On October 14, 2014, the Appellant and her husband (hereinafter, "Mr. Pinnock") went to the "Richmond on the Fairway" apartment complex to lease an apartment. The Appellant and Mr. Pinnock provided their personal information to a leasing agent for the apartment complex so the management company could conduct a background check on both of them. Because the Appellant had filed for bankruptcy, the leasing agent informed her that she could not be named on the lease. Before signing the lease, Mr. Pinnock asked the agent if there had been any crime at the apartment complex, such as someone breaking into residents' cars, because he was looking for a "safe environment" for his family. According to the Appellant, the agent stated that, as far as she knew, the apartment complex was very safe, that she had not heard of any crimes being committed on the property, and that no one had complained about crime at the complex. Both the Appellant and Mr. Pinnock read the lease before Mr. Pinnock signed it, and neither of them expressed any concern about the lease's provisions. The Appellant and her family moved into an apartment in the complex on or about October 24, 2014.

---

[1] See *Benton v. Benton*, 280 Ga. 468, 470 (629 SE2d 204) (2006).

On December 1, 2014, Kings Carlyle Club Apartments, LLC, sold the apartment complex to Richmond Apartment Holdings, LLC.[2] After that date, neither of the Appellees had a possessory or ownership interest in the property, nor did they retain any supervisory authority over it.

On December 26, 2014, the Appellant was standing in the kitchen of her apartment when two men in the parking lot fired numerous gunshots through the wall and into the apartment. One of the bullets struck the Appellant in her right thigh. The men were arrested for the crime. The Appellant and her family continued to live in the apartment for about two months before they moved into a different apartment complex nearby.

In September 2015, the Appellant sued the Appellees, asserting that their agent or employee had knowingly made false statements about the safety of the apartment complex and that such statements had induced the Appellant and Mr. Pinnock to rent

---

[2] The Appellant's original suit also asserted claims against Richmond Apartment Holdings, LLC, the company that purchased the apartment complex on December 1, 2014, and First Communities Management, Inc., the company that took over the management of the complex at that time. The Appellant dismissed her claims against these companies in August 2017.

an apartment there.[3] The Appellees filed a motion for summary judgment, which the trial court granted after conducting a hearing. This appeal followed.

> To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. A defendant may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. If there is no evidence sufficient to create a genuine issue as to any essential element of plaintiff's claim, that claim tumbles like a house of cards. All of the other disputes of fact are rendered immaterial. A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.[4]

---

[3] Although the Appellant's complaint also asserted claims for negligence and nuisance, she abandoned those claims against the Appellees in the court below, so that the only remaining claim was for fraud. Further, Mr. Pinnock voluntarily dismissed his loss of consortium claim in November 2016.

[4] *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991) (citations omitted).

We review the grant of summary judgment de novo.[5] With these guiding principles in mind, we turn now to the Appellant's specific claims of error.[6]

1. The Appellant contends that the trial court erred in granting summary judgment to the Appellees, arguing that disputed factual issues existed for the jury's resolution. Regardless whether this is true, the Appellees were entitled to summary judgment for the following reasons.

> Parties claiming fraudulent inducement have two remedies: rescind the contract as voidable or affirm the contract and sue for damages. A party that rescinds is not limited by the contract terms. If, however, the party decides to affirm and sue on the contract, the contract terms control, and the party is bound by any merger clause or disclaimer.[7]

---

[5] See *Benton*, 280 Ga. at 470.

[6] We note that the Appellant's brief fails to comply with Court of Appeals Rule 25 (c) (1), which requires that "[t]he sequence of arguments in the briefs shall follow the order of the enumeration of errors, and shall be numbered accordingly." Even so, we have considered each of the Appellant's alleged errors, so she has not been prejudiced by counsel's failure.

[7] *Sudler v. Campbell*, 250 Ga. App. 537, 540 (1) (550 SE2d 711) (2001) (footnotes omitted).

"Where a party elects to rescind the contract, he must do so prior to filing the lawsuit."[8] If, instead, the plaintiff affirms the contract and sues for fraudulent inducement, he or she must prove five elements in order to establish the fraud: (1) a false representation made by the defendant; (2) scienter; (3) an intention to induce the plaintiff to enter into a contract based upon the false representation; (4) justifiable reliance by the plaintiff; and (5) damage to the plaintiff as a result of the fraud.[9] The plaintiff's failure to establish even one of these elements entitles the defendant to summary adjudication.[10]

(a) Pretermitting whether the Appellant is able to establish the other elements of her fraud claim, she is unable to demonstrate that she justifiably relied on the verbal statements at issue, because the written lease contained a "merger" or "entire agreement" clause. The language of the clause was as follows: "This lease, any

---

[8] *Novare Group, Inc. v. Sarif*, 290 Ga. 186, 188 (1) (718 SE2d 304) (2011) (citation omitted).

[9] See *Scarbrough v. Hallam*, 240 Ga. App. 829, 832 (3) (525 SE2d 377) (1999).

[10] See id. (Because the plaintiffs failed to present any evidence that the defendants made allegedly false representations to them with the intent to deceive them and induce them into entering into the contract at issue, the plaintiffs failed to prove at least one element of their fraudulent inducement claim. As a result, the trial court properly granted summary judgment to the defendants on that claim.).

referenced addenda, and any addenda separately signed or referring to the lease or apartment shall constitute the entire agreement between the parties, and no prior negotiations, representations, or oral statements are binding."[11]

It is axiomatic that a merger or entire agreement clause "operates as a disclaimer, establishing that the written agreement completely and comprehensively represents all the parties' agreement. Thus, if the contract contains a merger clause, a party cannot argue they relied upon representations other than those contained in the contract."[12]

Because the allegedly fraudulent statements in this case were made before the lease was executed, the merger clause barred the Appellant from relying on the statements to support her fraudulent inducement claim.[13] It necessarily follows that

---

[11] This "merger" or "entire agreement" clause is substantially similar to that addressed in *Ainsworth v. Perreault*, 254 Ga. App. 470, 472 (1) (563 SE2d 135) (2002), which stated as follows: "'This Agreement constitutes the sole and entire agreement between the parties hereto and no modification of this Agreement shall be binding unless signed by all parties to this Agreement. No representation, promise, or inducement not included in this Agreement shall be binding upon any party hereto.'"

[12] *Authentic Architectural Millworks v. SCM Group USA*, 262 Ga. App. 826, 828 (2) (586 SE2d 726) (2003) (citations and punctuation omitted).

[13] See id.; see also *Novare Group*, 290 Ga. at 190 (3) ("Where a purchaser affirms a contract that contains a merger or disclaimer provision, he is estopped from

7

she cannot prevail on her fraud claim as a matter of law, and the trial court did not err in granting summary judgment to the Appellees.[14]

(b) The Appellant argues, however, that she is not bound by the merger clause because she did not sign the lease agreement.[15] We disagree.

The Appellant appears to be arguing that she was fraudulently induced to enter into the lease, while *also* arguing that she is not bound by the unambiguous terms of

---

asserting reliance on a representation that is not part of the contract.") (citation omitted); *Garcia v. Charles Evans BMW*, 222 Ga. App. 121, 122 (473 SE2d 588) (1996) (A plaintiff's failure to rescind a lease containing a merger clause defeated his claim of justifiable reliance on the defendant's verbal representations and was "fatal to his claim in tort for fraud.") (citation omitted).

[14] See *Sudler*, 250 Ga. App. at 541 (1) (The appellants were bound by the statement in a covenant not to sue that, in entering the agreement, they did not "rely on any inducements, promises, or representations not hereinabove expressly set forth in writing." "The presence of this merger clause [was] determinative and preclude[d] any reliance on oral representations." Accordingly, the trial court properly awarded the appellees summary judgment.) (punctuation and footnote omitted); *Post Properties v. Doe*, 230 Ga. App. 34, 37-39 (495 SE2d 573) (1997) (physical precedent only) (Although a tenant claimed that she moved into a ground floor apartment based on the assurances of the landlord's agent that ground floor apartments were safe, the tenant conceded that the lease contained a merger clause stating that it and any attached addenda constituted "the entire agreement between the parties and no oral statements shall be binding." Consequently, the tenant could not recover on her fraud claim.).

[15] As noted above, only the Appellant's husband signed the lease, as the leasing agent told the Appellant that she was precluded from being named on or signing the lease because she had previously filed for bankruptcy.

8

that lease. She has failed, however, to cite to any legal authority that supports this inconsistent position. While the Appellant relies on *Ragland v. Rooker*[16] in arguing that it is "well settled that indemnifying and exculpatory provisions in leases in Georgia are not operative as against nonsignatories,"[17] such reliance is misplaced. First, the "nonsignatories" to which *Ragland* referred were third parties who were temporary guests or invitees of the tenant and did not reside full-time on the property, unlike the Appellant in this case.[18] Second, the merger clause at issue in the instant case is neither an "indemnifying" nor an "exculpatory" provision, i.e., a provision which would have relieved the Appellees of financial liability for damages resulting from the negligence of the Appellees or a third party, or from a hazardous condition

---

[16] 124 Ga. App. 361 (183 SE2d 579) (1971).

[17] Id. at 365 (2). *Ragland* was overruled in part by the Supreme Court of Georgia in *Country Club Apts. v. Scott*, 246 Ga. 443, 444-445 (271 SE2d 841) (1980), in which the Supreme Court held that, under former Ga. Code Ann. § 20-504, indemnification and exculpatory clauses in lease contracts violated public policy and were void and unenforceable per se. See OCGA § 13-8-2 (b) (providing that, under specified circumstances, contract provisions that require one party to "indemnify, hold harmless, insure, or defend" the other party from liability for certain damages are against public policy and, thus, void and unenforceable).

[18] See *Ragland*, 124 Ga. App. at 364-366 (2).

9

on the property.[19] Thus, *Ragland* does not support the Appellant's attempt to rely upon the lease while simultaneously arguing that she is not bound by it.[20]

Moreover, even though the Appellant did not personally sign the lease, her husband signed it for the sole purpose of securing a residence for himself, the Appellant, and their family.[21] The Appellant then ratified his signing of the lease by moving into the apartment and taking possession of it, which she would not have

---

[19] See, e.g., id. at 366-368 (3); see also *Those Certain Underwriters at Lloyds, London v. DTI Logistics*, 300 Ga. App. 715, 718 (1) (686 SE2d 333) (2009) ("Black's [Law Dictionary] defines 'indemnify' as 'to reimburse (another) for a loss suffered because of a third party's or one's own act or default[.]'") (citation omitted); *Moclaire v. State*, 215 Ga. App. 360 (1) (451 SE2d 68) (1994) ("Black's Law Dictionary defines exculpatory as clearing or tending to clear from alleged fault or guilt; excusing.") (citation omitted).

[20] See generally *LaSonde v. CitiFinancial Mtg. Co.*, 273 Ga. App. 113, 115 (1) (614 SE2d 224) (2005) ("[A] party cannot have it both ways; it cannot rely on the contract when it works to its advantage and then repute it when it works to its disadvantage.") (punctuation and footnote omitted).

[21] See generally *Lankford v. Orkin Exterminating Co.*, 266 Ga. App. 228, 229 (1) (597 SE2d 470) (2004) ("The general law provides that a beneficiary need not be specifically named in a contract, so long as the contract shows that it was intended for the third[ ]party's benefit. Third-party beneficiaries under the contract are bound by any valid and enforceable provisions of the contract in seeking to enforce their claims.") (citations and punctuation omitted).

10

been authorized to do if Mr. Pinnock had not executed the lease.[22] And it is undisputed that the Appellant's right to live in the apartment resulted exclusively from and was dependent upon her compliance with the terms of the lease. In her deposition, she specifically admitted to this, as follows:

> Q. Now, even though you did not sign the lease agreement, did you consider yourself a resident?
> A. Yes.
> Q. Did you . . . believe that you needed to follow all the rules and regulations of the complex?
> A. Yes.
> Q. And that's because you were a resident?
> A. Yes.

In fact, the Appellant and her family continued to live in the apartment for at least two months *after* she was shot, i.e., after she knew or should have known that the apartment complex was not as safe as she claimed the agent misled her to believe. "Ordinarily[,] one who knowingly accepts and retains any benefit under a contract which [s]he has been induced to make by fraud, after [s]he has knowledge of such fraud, affirms the validity of the contract and will not be heard thereafter to repudiate

---

[22] See id. (By accepting the benefits of the contract and making payments under the contract, the appellants ratified the contract, even if the signature was irregular.).

11

it."[23] Finally, even if the Appellant had not ratified Mr. Pinnock's execution of the lease before she was shot, she clearly did so when she sued the Appellees, claiming that their agent *fraudulently induced her to enter into the lease.*[24]

Consequently, we conclude that the Appellant was bound by the written terms of the lease, including the merger clause, even though she did not personally sign the lease.[25]

2. Given our ruling in Division 1, supra, the Appellant's remaining enumerated errors are moot.

*Judgment affirmed. Barnes, P. J., and McMillian, J., concur in judgment only.**

* THIS OPINION IS PHYSICAL PRECEDENT ONLY. COURT OF APPEALS RULE 33.2 (A).

---

[23] *G. Mansour, Inc. v. Mansour's, Inc.*, 233 Ga. App. 7, 9 (1) (503 SE2d 304) (1998) (citations and punctuation omitted).

[24] See *Lankford*, 266 Ga. App. at 229-230 (1); see also OCGA § 10-6-1 ("The relation of principal and agent arises whenever one person, expressly or by implication, authorizes another to act for him or subsequently ratifies the acts of another in his behalf.").

[25] See generally *LaSonde*, 273 Ga. App. at 115 (1) (Because the appellant's claims arose from and were dependent upon the existence of a contract containing an arbitration clause, she was estopped from avoiding arbitration. "To find otherwise would permit [the appellant] to sue for breach of the [contract] without subjecting herself to all of the [contract's] provisions.").

A18A0994. PINNOCK v. KINGS CARLYLE CLUB
    APARTMENTS, LLC et al.

McMILLIAN, Judge, concurring in judgment only.

While I concur with the result reached by the majority in this case, I do not agree with all that is said. Accordingly, I concur in the judgment only, and as a result, the majority's opinion is not binding precedent. See Court of Appeals Rule 33.2 (a) (1).